Wisconsin.
1   200
181  475

THE STATE OF WISCONSIN, *ex rel.* SIMEON D. POWERS,

*vs.*

CHARLES H. LARRABEE, *Judge of the Third Judicial Circuit.*

#### MOTION FOR PEREMPTORY MANDAMUS.

The Legislature has the power to divide the counties of this State, when the area of the county exceeds nine hundred square miles.

In determining such area, bodies of water such as Lake Miceigan, or a part thereof, lying within the boundaries of the county, are to be computed.

When, by the division of a county, such county is left without a seat of justice, the Legislature may establish it without a vote of the people.

Washington county contained less than 900 square miles, exclusive of that part of Lake Michigan within its boundaries, with a county seat at Port Washington on the lake shore. The Legislature divided the county and created the county of Ozaukee, with Port Washington established as the county seat of the latter, and fixing the county seat of the former at West Bend. Held, that this act was not a violation of either Section 7 or Section 8 of Art. 13 of the Constitution of this State.

The relation in this case represents that, on the 4th day of March, A. D. 1853, the legislature passed an act, dividing the county of Washington, by setting off therefrom a certain portion of territory, and erecting the same into a new county by the name of Ozaukee. That by the said act, the county seat of Washington county was established at West Bend, and the times fixed for holding the terms of the Circuit Court at that place. That the time for holding one term of said court for that county had passed by, and the judge had neglected and refused to hold the term, and gave out and declared, that he would not hold any term of court at West Bend aforesaid; and prayed that a writ of mandamus might issue, to compel the respondent to hold the terms of court at West Bend

in conformity with the act aforesaid. An alternative writ of mandamus was issued, to which the respondent made return, insisting that the act of the 4th of March was repugnant to the Constitution of the State, and consequently he was not obliged to hold court at that place, as the relator claims. To this return the relator demurred.

Previous to the act of the 4th of March, the county of Washington embraced all that portion of territory between the counties of Milwaukee and Sheboygan, extending from the east line of Dodge county to the centre of Lake Michigan, with the county seat at Port Washington, on the shore of the lake.

By the act aforesaid, it was provided that all that portion of the present county of Washington, lying within towns 9, 10, 11 and 12, in ranges 21 and 22, and extending east from said townships to the eastern boundary line of said State, in lake Michigan, be set off and erected into a separate county, by the name of Ozaukee, and fixed the said county seat of said new county, at Port Washington.

It was a conceded fact, that Washington county, as it existed prior to the act of division, contained an area of less than nine hundred square miles, if that part of lake Michigan embraced within its boundaries should be excluded from its computation, but including the lake portion, it exceeded nine hundred square miles.

By another act of the legislature, approved March 19, 1853, it was provided, that all the officers residing in the County of Ozaukee, at the time of the passage of the division law, shall, from and after the passage of said law, be and remain officers of the county of Ozaukee; that the offices vacant by non-

JUNE TERM,
1853.

State of
Wisconsin
vs.
Larrabee.

residence in the county of Ozaukee, shall be filled by a special election, on the first Tuesday in May thereafter; that a similar election shall be held in the county of Washington at the same time, &c.

A number of other acts were passed during the same session, in relation to the same subject matter, but it is not necessary to detail them or their provisions here.

*H. S. Orton*, for the relator, contended that the division act was not repugnant to the Constitution. That the portion of territory covered by lake Michigan, is as much a part of the county as the dry land. The jurisdiction of the county is over the whole alike. By express provisions of the statute the county extends to the centre of the lake.

Nor was the effect of the act a removal of the county seat of Washington county. The power to divide a county necessarily comprises the power to locate or establish county seats.

This law did not remove, but created a county seat at West Bend. The division of the county of Washington, left that county without a seat of justice. The effect of the law was to establish a county seat for a county which had none. He cited *Vattel*, 165; *R. S.* 57; 6 *Pet.* 110.

*J. E. Arnold & E. S. Turner*, for the respondent, made and argued the following points:

The law dividing the county of Washington is unconstitutional, because it was not submitted to the people. *R. S.*, p. 37, § 7. The waters of lake Michigan are not part of the area of the county within the meaning of the Constitution.

The policy of the provision evidently was to pre-

June Term, 1853.

State of Wisconsin vs. Larrabee.

vent the multiplication of small counties, thereby increasing the county expenses, and it was deemed that the area of nine hundred square miles was the smallest which should sustain the expense of county government. But as a matter of law, the lands under lake Michigan can never be taxed, and therefore, within the policy of the Constitution, could not be taken into consideration in determining the divisibility of the county.

Within the limits of the several towns of the county, no portion of the lake is included. It is true, that by the acts creating some of the lake counties, and especially by the general act (*Sess. L.*, 1841, *p.* 76,) their boundaries were extended to the centre of the lake ; but this was done for the purpose of police, and from juridical necessity, and did not constitute a part of the county within the meaning of the Constitution under consideration.

The act dividing Washington county erects that part of the county which includes the county seat into a new county, thus continuing the officers of the old county in office, in the western part, and giving to that part the right to the books, records and public property of the county, and making it necessary for the eastern part to have new officers, records, &c. This transfers the county seat of Washington county from its former location to West Bend, in the western.

This directly conflicts with the provisions of section 8, of the Constitution, on the same page above cited. It removes the county seat without a vote of the people. The fact that it does something more, to-wit : divide the county, and that such change was necessary as a consequence of the division so made, does not render the act less repugnant to the Constitution.

June Term,
1853.

State of
Wisconsin
vs
Larrabee.

The prohibition is against removing the county seat, and that prohibition renders every act of the legislature unconstitutional to which the prohibited removal is necessary. The removal of the county seat was a necessary part of the division of the county as made, and of constituting the western part, the county of Washington, and making the east part, including the old county seat, a new county. The entire act was therefore void. 12 *Ill. Rep.* 391 ; 4 *Pet. Rep* 426–433–437–441.

[Mr. Arnold made some other points, illustrating and enforcing the foregoing, but no brief of them has been furnished.]

*By the Court*, WHITON, C. J. On the fourth day of March, 1853, the legislature passed an act setting off certain territory from the county of Washington, and, out of the territory thus set off, organizing the county of Ozaukee. This act did not, by its terms, change, or in any way affect, the organization of Washington county, but left it in all respects as it was before the act was passed, except the establishment of the county seat of the county at the village of West Bend.

Other acts, made necessary by the division of the county, were subsequently passed by the legislature, but they do not bear directly on the questions before us.

The respondent contends that the act of the legislature, setting off the territory and organizing the new county, was repugnant to the Constitution of the State, and that consequently he is not obliged to hold the terms of the Circuit Court at that place, as the relator claims.

The provisions of the Constitution, to which this

June Term,
1853.

State of
Wisconsin
vs.
Larrabee.

act of the legislature is supposed to be repugnant, are contained in sections seven and eight of article thirteen.

Section seven is as follows: "No county with an area of nine hundred square miles or less, shall be divided, or have any part stricken therefrom, without submitting the question to a vote of the people of the county, nor unless a majority of all the legal voters of the county voting on the question, shall vote for the same."

This provision is clear and explicit, and it is manifest that the county could not be divided by the act of the legislature alone, unless it contained an area greater than that fixed in the section of the Constitution above quoted.

Upon looking at the act of the legislature fixing the boundaries of Washington county, (*Rev. Statutes, Chap.* 2, § 28,) we find them as follows: "Beginning at the south-east corner of township nine, north of range eighteen, east of the meridian aforesaid; running thence due east to the eastern boundary line of this State in Lake Michigan; thence northerly on said boundary line, until it intersects with a line running due east between townships twelve and thirteen north; thence west on said line to the north-west corner of township twelve, north of range eighteen, east; thence south on said range line between seventeen and eighteen, east, to the place of beginning."

From these boundaries, it appears that Washington county, as it existed before the division, contained an area of more than nine hundred square miles, if that part of Lake Michigan lying within them is considered in determining the area of the county; and if it shall be excluded, the area was less than nine hundred square miles; so that the single question is,

JUNE TERM, 1853.

State of
Wisconsin
vs.
Larrabee.

whether this part of Lake Michigan is to be included or excluded in determining the area of the county.

It was claimed, on the part of the respondent, that the clause of the Constitution in question should be construed so as to deprive the legislature of the power to divide a county, unless it contained the required area of territory capable of being represented and taxed. This does not appear very evident. It is to be observed that the eastern boundary of this part of our State, as defined by our Constitution, and by the act of Congress admitting Wisconsin into the Union, is a line running through the centre of Lake Michigan. All that portion of the lake lying west of that line, being an integral portion of the State, must, of course, be included within the limits of counties, for the purpose of the due administration of law.

It is difficult to perceive why this area should be a part of the county for some purposes, and not for others. Many counties contain within their boundaries bodies of water, which are entirely surrounded by land lying within the same county. These bodies of water have always been considered integral parts of the counties in which they are situated, when the area of the county is to be determined ; indeed, to exclude the lakes and rivers, lying within, and running through a county, in order to ascertain its area, would, it is believed, be the adoption of a novel principle. We do not see how the fact that Lake Michigan is a large body of water, and does not lie wholly within the limits of Washington county, or within the State, can make any difference as to the principle which should govern us in deciding this question. A portion of it is within the boundaries of the county, and we think that the same principle should be applied in determi-

ning the area of the county, as though that portion of Lake Michigan within its boundaries was a small lake, entirely surrounded by land lying within the same county.

We do not, therefore, feel at liberty to adopt a principle in determining the area of this county which would exclude from our consideration an integral portion of it.

Section eight of article thirteen of our Constitution, relied upon by the respondent for the purpose of showing that this act of the legislature is void, is in these words:

"No county seat shall be removed until the point to which it is proposed to be removed shall be fixed by law, and a majority of the voters of the county, voting on the question, shall have voted in favor of its removal to such point."

This provision of the Constitution, the respondent contends, has been violated, because the county seat has been removed from its previous location, and established at the village of West Bend. We do not think this position well taken.

The legislature has full power to divide the counties of this State, as it shall think proper, subject only to the restriction contained in the clause of the Constitution, which we have quoted, and Washington county having had, previous to the passage of the act dividing it, an area greater than 900 square miles, there was nothing to limit this power as applied to that county. It could have been divided in any mode which the legislature should adopt. To hold that the legislature shall not divide a county in a particular way, although it contains an area greater than that mentioned in the Constitution, would be imposing a

restriction upon it which is not contained in that instrument.

In the exercise of this power, the legislature set off the place at which the county seat was located to the county of Ozaukee, and the county of Washington would therefore have been left without a county seat, unless the legislature had established one. This was done by the twelfth section of the act under consideration, which fixes it at the village of West Bend.

We think this was rather the establishment of a county seat, for a county which had none, that the removal of a county seat from one part of the county to another.

We are fully aware of the consequences of this decision ; we know it may be said that if the legislature should now annex the county of Ozaukee to the county of Washington, the only effect of the legislature upon the subject would be the removal of the county seat of the county of Washington, from its previous location, to the village of West Bend, and thus the provision contained in section 8, of article 13, would be evaded.

But it is to be remembered, that the same result would be reached if that part of the original county of Washington which now retains the name, had been set off from the remaining part of the county, and called by another name; this would clearly have given the legislature power to establish a county seat for the county thus set off, for it would have had none within its limits ; and by passing an act annexing Washington county to it, the only result would be the removal of the county seat of the original county of Washington, and the change of its name, which of course the legislature could by another act restore.

We do not feel at liberty to expound the Constitution, in such a way as to take from the legislature the power to divide the counties of the State, as they shall think proper, in cases where the area of the county exceeds the constitutional limit, and are therefore of opinion that the mandamus must be awarded.