THE ATTORNEY GENERAL *ex rel.* E. S. TURNER,

*vs.*

JOHN FITZPATRICK, Treasurer of Ozaukee County.

By an act of the Legislature, passed March 7, 1853, the County of Ozaukee was
created out of territory belonging to Washington county. The county seat of
Washington county, as it existed before Ozaukee was set off, was established
at the village of Grafton, which village is without the limits of Washington
county. *Held:* That the county of Ozaukee is a *new county*, never having had
an existence before the division of Washington county ; that, if Grafton was
the county seat of Washington county before the division, it would have re-
mained so afterwards, had it been retained within the limits of that county ;
but the fact that it was the county seat of that county, does not make it the
county seat of a new county, set off from Washington county.

This was an application for an alternative writ of
mandamus, to be issued by this court, commanding
the said respondent, as treasurer of the county of
Ozaukee, to hold and keep his office of treasurer of
said county of Ozaukee, at the village of Grafton, and
hold his sale of lands for unpaid and delinquent
taxes, at the said village of Grafton, in said county of
Ozaukee, or show cause, &c.

The facts in the case, so far as it is now necessary
to notice them, are as follows : Until, and previous
to, the year 1853, the territorial limits of the
present counties of Washington and Ozaukee, were
comprised within one municipal district, known by
the name of Washington county. In the year 1847,
the Territorial Legislature, by an act by that body
duly passed, fixed the temporary location of the
county seat of Washington county, for the period of
five years thereafter, at the village of Port Washing-

ton, which said act took effect on the —— day of
——, A. D. 1847.

By an act of the Legislature of the State, approv- ed the —— day of ——, A. D. 1852, the county seat of Washington county was permanently located at the said village of Grafton.

By the same act, the electors of the county of Washington were authorized to vote for, or against, the removal of the said county seat of Washington county, to the village of West Bend, and, if a majority of the votes cast at said election should be in favor of removal of the county seat of Washington county to West Bend, then the said village of West Bend should be the permanent county seat for said Washington county; and the relation further states, that a majority of the votes cast at said election, were against the removal of said county seat to West Bend.

By an act of the Legislature, approved March 7, 1853, entitled "An act for the division of the county of Washington, and for the erection of the county of Ozaukee," all of a certain part of Washington county, in the act particularly described, was set off therefrom and erected into a separate county, by the name of Ozaukee county, and the village of Grafton was, and remained within that portion of territory comprised within the newly created county of Ozaukee.

The relator was district attorney of said county of Ozaukee, and was also, in common with others, interested in the due sale of lands for delinquent taxes, &c.

And that the said Fitzpatrick, as treasurer, &c., neglects, &c.

Previous to the act of the legislature dividing the county of Washington, no act had been passed re-

DEC. TERM
1853.

Attorney
General
*vs.*
Fitzpatrick moving the county seat from Port Washington, where it had been temporarily located.

The act of division located the county seat of Washington county at West Bend, and that of Ozaukee county at Port Washington.

To the alternative writ, the relator returned in substance as follows : That by the act of the legislature at its annual session in the year 1853, the county of Washington was divided, and a new county, to be called the county of Ozaukee, was erected.

That by the terms of said act, the county seat of Ozaukee county was located at Port Washington ; and

That, in pursuance of the provisions of said act, he had held, and did still hold, the office of the county treasurer of Ozaukee county, at the village of Port Washington, the county seat fixed by said act.

To this answer, the relator demurred, and it was stipulated and agreed, that as Mr. Justice Crawford was absent from the bench on account of indisposition, and that as Mr. Justice Smith had been heretofore of counsel, in matters involving the same subject matter, the case should be heard and determined by the chief justice ; Mr. Justice Smith only sitting *pro forma*, to make a quorum.

*E. S. Turner*, for the relator.

The said relator contends, that the act of the legislature of 1847, located the county seat of Washington county at the village of Port Washington, for the period of five years, and for that only. That the constitution coming into force during that period, did not operate upon it to make the same a permanent location, or to extend the location beyond the time limited in the act.  2 *Chandler's Rep.* 212.

That the act of 1850, which provided for the per- manent location of the county seat of said county; for the division of said county; the organization of the county of Tuscola, &c., so far as it provides for a *location* of the county seat at the village of Port Washington, was a violation of section 8, article 13, of the Constitution.

Because it proposed to *locate*, from and after that date, which would include the unexpired portion of the five years for which it had already been fixed.

It was not during that time susceptible of being located anew, for the Constitution gives no authority to the legislature to provide for a location to take effect during the pendency of either a temporary or permanent location.

And in this case, for the balance of the five years after the adoption of the Constitution, the only possible manner in which said county seat could be affected by legislative enactment, was by providing for its removal, as prescribed in said section 8, of article 13, of the Constitution.

The act of 1847 places said county seat on *section* 28, *town* 11, *range* 22, *in the village of Washington.* The act of 1850 purported to locate the county seat at the *village of Port Washington.*

In 1847, it was located on that portion of section 28, which was, at the time of the passage of the act, platted and recorded as the village of *Washington.*

Subsequently in 1847, '48 and '49, extensive tracts were platted in said section twenty-eight, recorded, added to, and became a portion of the village of Port Washington.

By an act of the legislature, approved July 28, 1848, the village of Port Washington was incorpora-

K*

Dec. Term
1858.

Attorney
General
*vs.*
Fitzpatrick

ted, and included within its corporate limits the whole of said section 28.

The act of 1850 purports to locate the county seat at the village of Port Washington, under which act the location would be anywhere upon said section 28; and therefore might be *without* the limits of said village, as defined and known at the time of the passage of the act of 1847. The act of 1850, although it assumes to locate, yet by extending the area prescribed in the act of 1847 for a location, in fact and effect, authorized a removal of the county seat, and that too, while the Constitution, in its fullest sense, operated to inhibit its removal.

The Supreme Court, in their opinion in the case last cited, to-wit: "The State *vs.* Washington county," make use of the following language: " When the term of five years expires there will be no established location of the county seat of Washington county. It will be the duty of the legislature, on the happening of that event, to provide by law for the establishment of a new location; and that can be done without any conflict with the provision of the constitution regulating the removal of county seats." And although they declare, in another portion of that opinion, that they do not, for the purposes of that case, deem it necessary to decide the constitutionality of the act of 1850; yet the language above quoted cannot be mistaken or misinterpreted, and most clearly and effectually disposes of the provision in said act which assumes to fix the county seat at Port Washington.

In strict pursuance of the directory portion of said opinion, the legislature, within fifteen days after the expiration of the five years for which it had been temporarily located, passed an act permanently locating

the county seat of said county of Washington at the village of Grafton. At which place it was at the time of the passage of the act, approved March 5th, 1853, which provided for a division of said county of Washington, the organization of the county of Ozaukee, and the location of the county seat of said county of Ozaukee at the village of Port Washington.

That portion of said act which places the county seat, of itself, shows that the framer of the bill had no confidence in the position which he had previously taken; but that he himself deemed it necessary to divide the county, organize a portion of it anew, and declare Port Washington to be the county seat of that portion thus newly organized; that through that project, as odious and repugnant to the citizens of that county as it ever has been, and still is, was it alone possible to obtain a county seat at the village of Port Washington.

It is claimed by the relator that the provision of said act of 1853, last referred to, violates said sec. 8, of Art. 13 of the Constitution, in that it, in effect, although not in terms, removes the county seat from Grafton to Port Washington, without submitting the question of removal to a vote, and upon such vote obtaining a majority in favor of removal, that it deprives the people of Grafton and the county of a right, in a manner not warranted by the Constitution, The effect of the provision is an evasion of the constitutional requirement. *The State vs. Washington county, ante, The People vs. Marshall,* 12 *Ill. Rep.* 391. " The design of the Constitution is to prohibit things, not names. It is to forbid results and effects, and not the form of expression to be used in accomplishing them. A substance is sought after and not a

DEC. TERM 1853.

Attorney General
vs.
Fitzpatrick shadow. A real power was designed to be reserved to the people, and the mere hope of a right." The county seat of Washington county was fixed permanently at the village of Grafton, at the time of the division of said county, and it having been set off within the limits of Ozaukee county, it still remained a county seat, and, as a necessary sequence, the county seat of the county in which it lies. And must so remain until it is removed, in pursuance of the mode prescribed by the Constitution.

On these grounds, a mandate is asked upon the respondent in this case.

*H. S. Orton*, for respondent.

*By the Court*, WHITON, C. J. The original county of Washington comprehended the present county of that name, and the county of Ozaukee. By an act of the Legislature, passed on the 7th day of March, 1853, the county of Ozaukee was created out of territory belonging to the former county. The words of that act are, " all that portion of the present county of Washington, lying within the following boundaries, is hereby set off and erected into a separate county, under the name and title of Ozaukee." At the last term of this court, we decided that the act of the Legislature in question, was not repugnant to sec. 7, of art. 13, of the Constitution, which provides that no county with an area of nine hundred square miles or less, shall be divided, or have any part stricken therefrom, without submitting the question to a vote of the people of the county, &c. We held further, that, as after the creation of the county of Ozaukee, out of the territory belonging to Washington, the latter county had no county seat within its limits, the Legislature

had authority to establish one, without a vote of the electors of the county in favor of its establishment at the place fixed in the act. The relator contends that the county seat of Washington county, as it existed before Ozaukee was set off, was established at Grafton, and that the Legislature cannot, by changing the limits of the county, deprive it of its rights as a county seat; that it must consequently be the county seat of Ozaukee county, because it is situated within the limits of that county.

It is not admitted by the respondent that Grafton was lawfully the county seat of Washington county; but the view which I have taken of the matter renders that question immaterial. By the sixth section of the act under consideration, the seat of justice of the county of Ozaukee was established at the village of Port Washington, at which place the respondent now keeps his office. As the county treasurer is by law (*Rev. Stat. ch.* 10, § 137) obliged to keep his office at the county seat, the question to be decided is, whether Grafton is the county seat of Ozaukee county. Under the Constitution of this State, the legislature has unlimited power to divide counties whose area exceeds nine hundred square miles, and to create new counties out of territory set off from them. It has power, also, to establish county seats for counties which have none; but it cannot remove a county seat which has been established, until a majority of the voters of the county, voting on the question, shall have voted to remove it to some particular point. (*Const. Wis. art.* 13, § 8.) Admitting that Grafton was the county seat of Washington county, did it become the county seat of Ozaukee county? It is within the territory set off from Washington; and as

Dec. Term
1853.

Attorney
General
vs.
Fitzpatrick it cannot be the county seat of that county, for the reason that it is without the limits of that county, the relator claims that it must be the county seat of Ozaukee. He contends that the attempt of the legislature to establish the county seat at Port Washington, is within the spirit of the prohibition contained in the section of our Constitution above referred to. But this must depend upon the question whether Ozaukee is a new county. If it is a new corporation, or one which never had an existence before the act of the legislature in question was passed, it seems quite clear that none of the rights, privileges, duties or burthens, which were peculiar to Washington county, would belong to it without legislative aid. In the case of *The People vs. Morrell*, 21 *Wendell*, 563, the court decided that a county judge appointed for a county which was divided after his appointment, and a new county formed out of a portion of the old one, was not a judge for the new county, although his residence was within its limits, and although his term of office, as fixed by law, had not expired. The question decided in the case referred to seems to be identical with the one involved in the case before us, if the county of Ozaukee is a new county, never, before the division of Washington county, having had an existence.

The question then recurs, is such the fact? It is certain, to my mind, that this question must be answered in the affirmative. The act of the legislature, in terms, creates the county. The language is: " All that portion of the present county of Washington, lying within the following boundaries, to wit: [describing tho boundaries] is hereby set off and erected into a separate county, under the name and style of

Ozaukee." The county of Washington, on the con-
trary, is left untouched, except as to its territory. It
is, in legal effect, the same county, curtailed of the ter-
ritory taken off to form Ozaukee. All its rights, du-
ties and burthens remain to it, except so far as they
have been changed by legislative enactment; and
there can be no doubt that if Grafton was its county
seat before the division, it would have remained so
afterwards, had it been retained within its limits.
But the fact that it was the county seat of that
county, is no good reason why it should be the county
seat of another one.

Upon the whole, I think that the application for
the mandamus must be denied.