HUSTON, J.,
Concurring. — I approach the consideration of this case with a full recognition of the fact that, when called upon to pass upon the validity of an act of a co-ordinate branch of the government, courts have a delicate duty to perform, but it is a duty the obligation of which must not be evaded or shrunk from. I recognize further the potency of the rule which requires that, before pronouncing an act of the legislature invalid, the court should be fully satisfied that such act is clearly repugnant to some provision of the organic law of the state. In this view let us consider the questions involved in this case. Section 1, article 18, title “County Organization,” of the constitution of Idaho, reads as follows: “The several counties of the territory of Idaho, as they now exist, are hereby recognized as legal subdivisions of this state.” Section 2 of said article is as follows: “No county seat shall be removed unless upon petition of a majority of the qualified electors of the county, and unless two-thirds of the qualified electors of the county voting on the proposition at a general election, shall vote in favor of such removal. A proposition of removal of the county seat shall not be submitted in the same county more than once in six years, except as provided by existing laws. No person shall vote at any county seat election who has not resided in the county six months and in the precinct ninety days.” Section 3 of said article 18 is as follows: “No county shall be divided unless a majority of the qualified electors of the territory proposed to be cut off, voting on the proposition at a general election, shall vote in favor of such division; provided, that this section shall not apply to the creation of new counties. No person shall vote at such election who has not been ninety days a resident of the territory proposed to be annexed. When any part of a county is stricken *78 off and attached to another county, the part stricken off shall be held to pay its relative proportion of all existing liabilities of the county from which it is taken.” Section 4 of the same article reads: “No county shall be established which shall reduce any county to an area of less than four hundred square miles, nor shall a new county be formed containing an area of less than four hundred square miles.” On the third day of March, 1891, the legislature of the state of Idaho enacted a law entitled “An act to create and. organize the counties of Alta and Lincoln, and to locate the county seats of said counties, and to apportion the debt of Logan county.” The sole purpose and effect of this act was to segregate or strike off from Logan county nearly one-half its territorial area, and attach the part so stricken off to Alturas county, and to change the name of Alturas to Alta, and that of Logan to Lincoln. The provision for the apportionment of the debt of Logan county was a necessary sequence. Was this act, so passed, repugnant to the provisions of the constitution of the state above quoted, or to any of them? We must take this constitution as we find it, as it is presented to us by its makers — the people. It is not within the purview of our authority or the limits of our jurisdiction to bate, or set aside, or treat as naught, any jot or tittle thereof, and “no accepted canon of construction can justify us in adding to the constitution qualifying words of our own, suggested only by outside considerations, which may or may not have been of weight with the convention in framing, or the people in adopting, that instrument.” (Cooley’s Constitutional Limitations.) Provisions similar to those above cited from the constitution of Idaho are found in many of the constitutions of other states, and there has been no more disturbing element in the legislation and litigation in many of the states than that which arises from the organization of counties, and the location and changing of county seats, and the changing of county boundaries. The elements of greed and self-interest enter so largely into the consideration and discussion t of .these questions' that men have been prone, as shown in the history of several' of the western states, not only to override constitutional provisions, but to set aside all legal restraints, and resort to brute-force, to carry out their purposes in this direction.' Idaho, *79 while a territory, had some experience in this sort of legislation, of which, doubtless, the framers of our constitution were not unmindful; hence we find in our constitution a provision unknown to that of the older states, and which can only be found in the constitutions of nine states of the Union, to wit, Missouri, California, Colorado, North Dakota, South Dakota, Washington, Montana, Texas, and Idaho, to wit, section 1 of article 18. The first appearance of this provision we find in the constitution of Missouri adopted in 1875. We are not at liberty to ignore or treat as meaningless this provision of the constitution more than we could any other. Its incorporation into the organic law by the makers thereof was for a purpose. Doubtless they mean what the language of the section plainly expresses — that the existing county organizations should remain as such, subject only to such change as was permitted by the constitution. A careful examination of the authorities will fail to show a single case in which the right of the legislature to abolish a county has been recognized in any state whose constitution contained a provision like that of section 1 of article 18 of the Idaho constitution. The judges of the supreme court of the state of Missouri (55 Mo. 295) did hold that “counties are subdivisions of the state for governmental purposes, and there can be no doubt about the constitutional power of the general assembly to create, alter, abolish and regulate them as expediency may demand, so that no vested rights are interfered with.” This opinion was rendered in 1873, and it is significant that in the constitution adopted by the people of Missouri in 1875, the following provision appears for the first time in the organic law of that state: Section 1, article 9: “The several counties of this state, as they exist, are hereby recognized as legal subdivisions of the state.” I have been unable to find a single case in any of the states, whose constitutions contain this provision, where the legislative right to abolish a county has been upheld by the courts. The contention of the plaintiff would make this provision of our constitution a mere “oyez” clause, having no purpose or intention, save to give utterance to a self-evident fact. I dare not so mock the wisdom of the makers of our constitution. It may be conceded as elementary that the legislature has entire control of *80 the questions of county organizations and county boundaries* except where limited by the inhibitions of the constitution; but the plaintiff contends that there are no inhibitions upon the power and authority of the legislature in this matter contained in the constitution; that the first clause in section 3 of article 18: “No county shall be divided unless a majority of the qualified electors of the territory proposed to be cut off, voting on the proposition at a general election, shall vote in favor of such division” — is rendered null and void by the proviso “that this section shall not apply to the creation of new counties.” Without doubt this section is unhappily constructed. Strictly read, the proviso would apply to the whole of section 3, and yet the legislature did not so construe it, for they made provision in the act under consideration for the apportionment of the debt of Logan county, as required by the closing paragraph of section 3: Surely it would require most cogent reasoning to induce any court to arbitrarily set aside a provision of the constitution so plainly and unequivocally expressed, and wthich is palpably intended to reserve to the people so valuable and important a right as that of having a voice in the decision of a question in which they are the parties most interested. I cannot believe that it was the purpose of the makers of our constitution to thus “palter in a double sense” with the people whom they were representing, to so “keep the word of promise to their ears, and break it to their hopes.” The constitution distinctly proclaims that “no county shall be divided unless a majority of the qualified electors of the territory proposed to be cut off, voting on the proposition at a general election, shall vote in favor of such division.” There is nothing equivocal, nothing ambiguous, in this language. The limitation upon the legislative power is direct, palpable and imperative. The obvious intent, purpose and effect of the act in question was to cut off or segregate a portion of Logan county, and attach the same to Alturas county. Not for the purpose of creating a new county in the sense that term is evidently used in section 3; but solely, entirely and exclusively for the purpose of enlarging the area of Alturas county. That this was the sole purpose of the act is so plain “that he who runs may read.” The changing of names of the two counties from Alturas to *81 Alta, and from Logan to Lincoln, was but a weak invention, of no more operative force than Fauleonbridge’s boast: “And if his name be George I’ll call him Peter.” The makers of the constitution recognized the doctrine that even local governments, “long established, should not be changed for light and transient causes,” or be left entirely to the caprice of legislative bodies, to the exclusion of the rights, interests, and wishes of the people who are most interested therein. But we are told that this view does away entirely with the powers of the legislature, clearly allowed by the constitution, to form new counties. A mere glance at the map of Idaho will furnish a complete answer to this objection. A very wilderness of new counties can be formed out of the area of this state without the slightest impingement of any of the provisions of the constitution. But if the contention of the plaintiff is to obtain, the whole internal structure of the state, both territorial and political, will be left to the mutatious whims of each succeeding legislative assembly, and the protective provisions of the fundamental law will stand, “like counters in a barber’s shop, as much for mock as mark”; and gerrymandering will assume the position of an exact science.
No better rule, it seems to me, can be found for the guidance of courts in the decision of these cases than that expressed by Chief Justice Bronson in Oakley v. Aspinwall, 3 N. Y. 547. Says that learned jurist in his opinion in that ease: “It is highly probable that inconveniences will result from following the constitution as it is written. But that consideration can have no force with me. It is not for us,-but those who made the instrument, to supply its defects. If the legislature or the courts may take that office upon themselves, or if, under color of construction, or upon any other specious ground, they may depart from that which is plainly declared, the people may well despair of ever being able to set any boundary to the powers of the government. "Written constitutions will be more than useless. Believing, as I do, that the success of free institutions depends upon a rigid adherence to the fundamental law, I have never yielded to considerations of expediency in expounding it. There is always some plausible reason for latitudinarian constructions which are resorted to for the purpose of acquiring power; some *? evil to be avoided, or some good to be attained by pushing the powers of the government beyond their legitimate boundary. It is by yielding to such influence that constitutions are gradually-undermined, and finally overthrown. My rule has ever been to follow the fundamental law as it is written, regardless of consequences. If the law does not work well, the people can amend it; and inconveniences can be borne long enough to await that process. But if the legislature or the courts undertake to cure defects by forced and unnatural constructions, they inflict a wound upon the constitution which nothing can heal. One step taken by the legislature or the judiciary in enlarging the powers of the government opens the door for another, which will be sure to follow; and so the process goes on until all respect for the fundamental law is lost, and the powers of the government are just what those in authority please to call them.” Says Judge Cooley, in his work on Constitutional Limitations, fifth edition, page 86, note; “We agree with the supreme court of Indiana (Greencastle Tp. v. Black, 5 Ind. 557, 565), that in construing constitutions courts have nothing to do with the argument áb inconveniente and should not bend the constitution to suit the law of the hour.” What was intended to be done, what was done, by the passage of the act under consideration? Was any new county formed? The proposition is absurd; the position is untenable. The simply enlarging the area of one county by appropriating a portion of an adjoining county cannot, it seems to me, be seriously claimed to be the organization of a new county, even if the ceremony of rechristening of both counties is resorted to. It is suggestive of the view which the legislature had of the meaning of the provisions of section 3, article 18, of the constitution, that at the same session at which the act under consideration was passed the same body enacted a law dividing the county of Ada, and erecting from the part segregated an entirely new county to be called “Canyon county,” and submitting the adoption thereof to a vote of the people of the segregated territory. What rights have the people of Ada county, under the constitution, which are not shared equally by the people of Logan county? Is the constitution to receive one construction in behalf of the people of one county, and an entirely different interpretation when the rights and interests of the people of another county are involved? Is not this, in the language of the supreme court of Indiana, above cited, 'Tending the constitution to suit the law of the hour”? The proposition of counsel that the provisions of the constitution are only applicable when in the judgment of the legislature*it is expedient to make them so, is something more than startling, it is “monstrous and heretical.” We can find no authority in support of such a view. There would be little use for written constitutions if such a rule could obtain. Constitutional provisions cannot be regarded as directory merely, to be obeyed or not, within the discretion of either or all of the departments of government. (Hunt v. State, 22 Tex. App. 396, 3 S. W. 233.) A strained construction or astute interpretation is not to be given to relieve against local or individual hardships. (Law v. People, 87 Ill. 385.) While it is true that the constitutions of very many of the states contain clauses similar to section 4, article 18 of the Idaho constitution, it is equally true that only in the constitutions of the nine states above mentioned will a provision similar to that of section 1 of article 18 of the Idaho constitution be found; and I have been unable to find a single case in any of those nine states where the authority of the legislature to abolish existing counties has been sustained.
The case of State v. Larrabee, 1 Wis. 200, is not in point. Section 7, article 13, of the constitution of Wisconsin, provided that “no county with an area of nine hundred square miles or less shall be divided, or have any part stricken therefrom, without submitting the question to a vote of the people of the county, nor unless a majority of all the legal voters of the county voting on the question shall vote for the same.” Washington county contained less than nine hundred square miles exclusive of that part of Lake Michigan within its boundaries. It was claimed that so much of Washington county as was covered by Lake Michigan should not be included in estimating its area; and that therefore the act of the legislature segregating a portion of said county, and erecting the county Ozaukee from the territory so taken off, was in violation of said section 7, article 13, of the constitution. The court held that in estimating the area of Washington county the portion covered by Lake Michigan should be included, and this took it out *84 of the provisions of said section 7, article 13. The other question decided by the court in that case, touching the effect of the segregation and organization of the new county upon the county seat, has no applicability here. The case of Attorney General v. Fitzpatrick, 2 Wis. 542, is only another phase of the same quesetion, arising under the same act, and upon the same facts. The other authorities cited by counsel for plaintiff in support of the proposition that the legislature is supreme in the matter of creating or abolishing counties, being all decisions from states whose constitutions have no provision in similitude with section 1, article 18, of our constitution, cannot be considered of weight herein. It seems to me that the language of Judge Catón in People v. Marshall, 12 Ill. 396, is peculiarly applicable to this case. Says that learned judge, in the closing part of his opinion: "There is, no doubt, a certain degree of plausibility in the course of argument by which this law is attempted to be sustained. It is truly said that the constitution is a restraint upon legislative powers, and there is no doubt that this law might be passed unless prohibited by the constitution.' From this it is argued that, as there is no express prohibition to abolish counties, it is within the power of the legislature to do so, and from necessity there must be authority to organize the disorganized territory. But the reasoning is more specious than sound. As we have before seen, it leads inevitably to the overthrow of the paramount law of the state. No means can be constitutional which effect an unconstitutional object. While we would not extend the prohibitions of the constitution, so as to embrace measures and objects not manifestly and clearly within the design of its framers, yet where that is undeniably the case, then by no means whatever should it be allowed to be evaded.” Suppose the legislature of Idaho, in their wisdom, had, in the language of counsel, decided that it was to the advantage of the people inhabiting that portion of the state of Idaho now known and designated as Ada county, to have that county abolished, and the territory of which it is composed-attached to Washington county, and should enact a law to that effect, without submitting the question to a vote of the people to be affected thereby, can it be seriously contended that such an act would be constitutional? Or suppose a legislature of *85 Idaho, not actuated or prompted thereto by wisdom, or any principal of righteousness or justice, but “moved and instigated by the devil,” as it is said the legislatures of other states sometimes are, should “decide it is to the advantage” of the people inhabiting that portion of Ada county lying north of Main street in Boise city, that such territory should be attached to Boise county, and should pass an act to that effect, without submitting it to a vote of the people to be directly affected thereby, will it be claimed for a moment that such a law could be sustained as constitutional ? And yet all these consequences are involved in the acceptance of the contention of the plaintiff. Say the supreme court of Tennessee in James Co. v. Hamilton Co., 89 Tenn. 237, 14 S. W. 601: “A county is a government within a government, and its voters must be consulted in all matters pertaining to it. It is not created, nor can it be destroyed, by an arbitrary legislative breath. The county was made at the instance of the people and for its people, and can be changed or abolished only, when at all, by their consent. If the legislature may dissolve one county and divide it out among its neighbors, it may abolish all, and destroy the state”; and it must be remembered that the state constitution of Tennessee contains no such provisions as section 1, article 18 of the Idaho constitution. It is evident to my mind that section 3, article 18 of the constitution does not, as it stands, clearly express the intention of the makers of that instrument. A careful analysis of the section will, I think, make this apparent. It seems to me that the proviso is misplaced in that section. Evidently it was the intention of the makers of the constitution that so much of section 3 as required a submission to the people of any proposition for the dividing of any county should not apply to the creation of a new county, and no further. My own view, therefore, is that, to express the evident intention and meaning of the makers of the constitution, section 3, article 18, should be construed to read: “No county shall be divided unless a majority of the qualified electors of the territory proposed to be cut off, voting on the proposition at a general election, shall vote in favor of such division. No person shall vote at such election who has not been ninety days a resident of the territory proposed to be annexed, provided, that this section shall *86 not apply to the creation of new counties. When any part of a county is stricken off and attached to another county the part stricken off shall be held to pay its relative proportion of all existing liabilities of the county from which it is taken.” I do not think it was the intention of the makers of the constitution that the proviso in section 3 should apply to the last clause of said section. There is no reason grounded in any principle of equity or justice which would make the people of a segregated portion of a county responsible for a pro rata portion of the existing liabilities of the old county in case of a division of the county, and not in a case where the same territory was segregated for the purpose of forming or creating a new county. I am unhesitatingly of the opinion that the act of the legislature of March 3, 1891, segregating a portion of Logan county therefrom, and annexing the territory so segregated to Alturas county, was not the creation of a new county in any sense, and that said act is void, as contravening the provisions of section 3, article 18 of the constitution of Idaho; that the provisions of said act abolishing the counties of Alturas and Logan are void as contravening section 1, article 18 of said constitution; and that the writ of mandate should be denied.