By the Court,

Cowen, J.
By art. 1-, § 7, of the constitution, the power of the legislature to create new "counties is; recognized, under the restrictive words: “ No new county shall hereafter be erected, unless its population shall entitle it to a member” [of assembly.] By art. 4, § 7, “ The governor shall nominate, <fcc., and with the consent of the senate, shall appoint all'judicial officers, except justices of the peace,” &c.By art. 5, § 6, “Judges of the county courts, &c., shall hold their offices for five years? &c. The question presented by the demurrer is, whether the office of Judge Morrell, who was duly commissioned and sworn as first judge of the county courts of Montgomery, was vacated by the division of that county into two counties.
The act is entitled “ An act to erect a new county from a part of the county of Montgomery, by the name of Fulton,” &c. Statutes, sess. of 1838, p. 328. The first section declares that the whole of Montgomery lying north of the prescribed division line, should be a separate and distinct county; and be known and called by the name of Fulton, &c. and that all the remaining part should be and remain a separate and distinct county by the name of Montgomery. The statute declares what would necessarily result as an operation of law, that the new county of Fulton should be entitled to 'and possessed of all the benefits, rights, privileges, and immunities, and be subject to the same duties, as the other counties of this state. Among those rights, is that to have a court of common pleas and general sessions of the peace, the times and places of holding which, after the 31st day of December, 1838, when Fulton was to become a new and distinct county, for the purposes of judicial business, were prescribed by the ninth section of the act. It is declared that the judges of the common pleas of the new county shall have power to cause a seal to be made for that court, &c. \ 26, with various other provisions ; none of which, however, indicate on the part of the legislature, any intent to continue the judicial officers in place for either county. Whether they remain, therefore, or *576 their places became vacant by the organization or creation of the two counties out of the old one, was left entirely to the-operation of the constitution and the general laws, upon sucli a juncture of circumstances.
Independent of the restriction imposed by the constitution in respect to the tenure of office, there is no question that the legislature have the power directly to restrict the term during which a first judge shall hold. It is of the nature of legislation to create and abolish offices accordingly as they may be deemed useful or superfluous,; and I am aware of no constitutional restriction which would prevent their- discontinuing the county courts altogether, and substituting, other jurisdictions of a more general or a more limited territorial extent. The county judges were created and their number limited by statute. 1 R. S. 87, 2d ed. Nor does the constitution any where declare even their existence to be essential. So long as they shall be required by statute, the constitution demands that they shall be nominated and appointed by the governor, on the senate consenting.- But should the office be abolished and their .powers transferred to a jurisdiction of greater or less territorial limits, the tenure of office' would he gone. In the very instance before us; the legislature erected a court whose jurisdiction from April till December, 1838, covered two counties; and can any one doubt that they might now restore and continue the same-power to judges who should be appointed according to the provisions of the constitution ? The superior court of the-city of New York was created by statute, with a jurisdiction,, in respect to subject matter, greater than the common pleas of that city. Does any one doubt that the legislature might have merged the common pleas of that county or even of several others in the same court, had they been satisfied that such-an act was necessary for the public good ? I do not understand the state legislature to be restricted in their power any more than the British Parliament, except by the state and federal constitutions-.
What then is the amount of constitutional restriction in-the ease before us 1 The county and the county courts of *577 Montgomery existing it was impossible for the legislature to remove Judge Morrell, or abridge his term of office. But the legislature had the power to create new counties out of the old one. provided the enumeration-of inhabitants would warrant it. The following point was submitted to us by the counsel for the defendant: “ The first section of the act of the legislature created two new counties, not by implication but by direct enactment. One is named Fulton, the other Montgomery, and the privileges that Montgomery has over Fulton are not secured by its name ; but by express legislative grant in the 12th section. [The section which grants to the new county of Montgomery a property in the records of the old county of that name.] It is unnecessary to decide whether the point, so far as it asserts that the present county of Montgomery is a new county, in the legal sense of the term, be correct. The mode in which the legislature have expressed themselves indicates an intent, as I think, to continue the old county of Montgomery in that which retains the old name. Several other features of the act mentioned by the attorney general in the course of the argument, favor that idea. This being the case, no objection is perceived to the conclusion which seems to have been drawn by the government, that the commissions of such of the former officers of Montgomery as are qualified by local residence, should be considered as still in force with regard to the county of the same name. It is, in legal effect, the old county curtailed by the territory taken off for the new. But the constitution, as well as the nature of the office implies, and the statute, 1 R. S. 93, § 12, 2d ed., Id. 111, § 37, sub. 4, expressly requires residence within the county, as one essential qualification of a county judge. Judge Morrell fails in that qualification by being left without the boundaries of Montgomery, and within a county professedly new, and it seems impossible to maintain that, so far as the new county is concerned, it has not lost all legal identity with the old. Its territory, its inhabitants are no longer known as those of the Montgomery, for which Judge Morrell was appointed. Its towns are some of them intersected by the line of division. The statute which created the *578 county for which he was commissioned is, as to Fulton, repealed ; and the county is unknown to the constitution or the law. It was part of Montgomeryy it is now the new.county Fulton ; and so completely is its identity gone by the dissolution, that, independent of any provision by statute, it would be-absolved from all debts and duties due from, and deprived of all participation in the claims of the former county of Montgomery. 2 Kyd on Corp. 516. 1 Willcock on Municipal Corp. 330, pi. 858. The corporate succfession. is bro- ‘ ken, and, at common law, all property in possession or in action, which its inhabitants could otherwise have claimed as-corporators, would have reverted to the original donors, or vested in the state. Td. id. To guard against such a consequence, .on the division both of towns and counties, the legislature of this .state have interposed by statutes, 1 R. S. 330, 358, 2d ed. and provided for a summary distribution of property, &c., by commissioners." By another statute, actions may be brought in the- name of the supervisors, loan officers, &c.,' and superintendents of the poor of a county; and an action lies against the board of supervisors of a county. 2 R. S. 387, 8, 2d ed. Can it be pretended for a moment, that an action would be sustainable by or against the board of supervisors of Fulton in respect to rights or liabilities contracted by the old county of Montgomery ? I admit that merely changing the name of an old corporation, even with the addition or subtraction of rights, would not work a change of identity. Several' cases are cited to this effect in 1 Kyd on Corp. 232, 3, n.; but I dq not find that the cases go farther. To sustain the supposed action, you must be enabled to aver and prove that the corporation, bearing both the old and new name, is the same. The statute which divided the counties might have declared that the old should have .been continued in the new, and been considered the same; but so far from doing this, it seems to look for corporate succession, to the new county of the same name. In trying the action we have supposed,’it seems clear that a jndge would be bound to charge the jury as matter of law, against the truth of the supposed averment. In the case at bar, the pleader has not hazarded such an averment. His *579 logic is, “I was the first judge of Montgomery; therefore, I am the first judge of Fulton,” which he admits to be a new and distinct county. The conchision that he is first judge of Ontario would seem to come with equal force.
The difference between the case before us and a mere formal change is quite obvious. Under a mere change of name, the commissions of the judges and all judicial acts might have continued the same 'mutatis mutandis. There would have been no substantial alteration. Had a town been added or set off, it would have been but an enlargement of territorial jurisdiction in the first case, and a contraction in the last The commissions of the judiciary are granted and accepted, subject to all such changes as the legislature may think themselves bound to make from time to time, within the limits of their constitutional powers. No one doubts their power to add to or subtract from the territorial j urisdiction of local courts, nor to do the same thing in respect to subject matter.. Indeed the latter may be said of any court, even that for the correction of errors. It does not follow that, because a court is created by the constitution or otherwise, its measure of power must therefore always continue the same. •
The legislative power of creating new counties is equally plain in the nature of things with that of enlarging or contracting jurisdiction ; it is equally sanctioned by practice in all times, and is expressly recognized by the constitution. New counties must be created out of the old.; and then, even if the old offices could exist as abstractions, or in contemplation of law, they certainly cannot, by mere operation of law, be applied to the new corporation. The legislature doubtless have the power to continue them in the new county by express enactment. By doing so to the end of the constitutional term, they would detract nothing from the power of the executive department. But by remaining silent, the office is gone for all practical purposes. The county for which Judge Morrell was appointed was created by statute. It was capable of destruction by the same power; and it has been destroyed pro tanto. Was it ever thought that after a corporation is dissolved, its mayor or *580 other officers still retained their places, whatever the term for which, by charter, they might have been elected? They are but incidents to the corporation, which is an artificial being, capable of dissolution by act of the legislature, except in those cases wherein their power may be restrained by the constitution of the United States. 2 Kyd on Corp. 447. One effect of a dissolution is, that all corporate privileges and franchises are extinguished; and the creating power may either restore it, or incorporate another set of men in the same place. Id. 516. By proceeding to separate a part of the territory from an old county and erect it into a new, the legislature have incorporated another set of men as effectually as if the acts of dissolution and creation had been by separate statutes enacted at any distance of time from one another. One incorporated village, A., is divided by statute into two distinct incorporated villages, viz. B. and C.; independent of an express statute declaration, no lawyer would think of suing either B. or C. or both, for a debt due from A. Such a division the legislature may make-even by a majority vote, either of cities or villages. The People v. Morris, 13 Wendell, 325. These are, like towns or counties, mere political bodies, and their powers may be modified, or the corporations themselves abrogated. Id. The recorder of a city is also constitutionally commissioned for five years. Const, art. 5, $ 6. But he can no more hold his office after the city charter is repealed, than if the city should be physically destroyed. A simple legislative division into two new distinct cities would work the same consequence. In 1784, the town of Hempstead, owning lands as a corporation, was by statute divided into two towns by different names, South Hempstead and North Hempstead. The latter filed a bill against the former, for a partition of the common lands of the old town, which was dismissed by the chancellor, and the decree affirmed in the court of errors. North Hempstead v. SouthHempstead, Hopkins, 288. 2 Wendell, 109. Chancellor Sanford said that, by the division, two new corporations were established in the place of one ; and each of the new political bodies had a capacity to hold land within its own limits. The succession of the old town *581 was holden by both courts to be broken by the division, which in legal effect was adjudged to be an assignment of the common lands of Hempstead situate in each town, to the new corporations. On appeal, Savage, Ch. J. who delivered the opinion of the court, put the case of dividing one state or one county into two, and thought that the public property of the old would fall to the share of the new political bodies, so far as it should lie within their limits; and this may well be taken to be the legal effect of such a division. But no one pretended in the course of the cause that either new town was identical with the old one. A division by operation of law, or by an implied legislative assignment, may well be predicated of the former lands common to both, without its following that officers retain their commissions for each according to their respective residence. Land is severable, and our general legislation has long contempla ted that each town should control the common lands lying within its borders. Real and personal property is apportionable by the courts between corporations as between individuals, according to their legal or equitable rights as proprietors. See Potter v. Chapin, 6 Paige, 639. It always finds a title to property somewhere; while an office is but the political adjunct of a political person; and cannot, in the nature of things, exist, when the latter becomes extinct. The dissolution of a corporation is, at common law, like the death of a natural person without heirs or distributees. It leaves no one to take its property or franchises as successor. The legislature may provide for a transfer, but the act enures by way of assignment, not as a corporate succession, unless it provided for renewing and continuing the old corporation-
On the whole, I have been unable to perceive that this new county, formed of a fragment from the old, can, in any sense, be considered its successor, or in any manner the same; and it seems to me that it must follow, according to the plainest reason and propriety, that the commission of judge for old Montgomery cannot as such have any existence in connection with the new county of Fulton. In saying so, I must of course be understood to mean such reason and propriety as 1 have been able to derive from the lan *582 gnage of the existing constitution and laws. I cannot deny that the legislature intended or rather desired to continue the commission of the defendant for the new county, and that they believed they had done so; nor do I deny that it would have been proper, in a moral sense.' Such a denial would be to contradict the high opinion which, through personal acquaintance, I have had the fortune to imbibe of the capacity and merit of the incumbent with whom the state is litigating. But I cannot avoid the conclusion that the legislature .have, however unfortunately, when the measure is viewed as interfering with the general purpose of judicial independence, or wanting in justice to- the man, inadver ■ tently I have not the least doubt, failed to give any express or implied implication upon which we can refuse to render judgment of ouster. I am entirely satisfied from the best consideration I have been able to bestow, upon the case, aided as I have been by able arguments on both sides, that such an act would be-to legislate, not to adjudicate.
Nor have I felt materially embarrassed in advanci ng to this conclusion, from any authorities which were cite d on the argument. It was supposed by the counsel for the defendant, that the principle of the cases of Ex parte M'Collum, 1 Cowen, 550, and The People v. Garey, 6 id. 642, is adverse to the power of the legislature, so to alter counties, or other municipal corporations, or create new ones, as to abridge the constitutional duration of those'offices which pertain to them. The first case held that a legislative organization of a new county, by combining several definite subsisting towns of other counties, and declaring that the justices already appointed, for those towns respectively should hold for the residue of their terms in the same towns, and relatively to the new county, was constitutional. The last _ ¡case held that, on a similar erection of the county of Orleans from definite subsisting towns of Ontario county, the legislature had' no power to abridge the term of office for which ¡the several justices had been appointed, while their towns belonged to Ontario; and a provision to'that effect'was declared to be unconstitutional and void. But in neither case was there even a change in the name or territorial *583 limits of the corporations to which the offices in question belonged ; much less an actual dissolution of those corporations. It is true some general remarks were made by the learned judges who delivered opinions in those cases, which, as it is supposed, give countenance to the proposition contended for by the defendant. In the first case, 1 Cowen, 566, 567, the chief justice intimated that the legislature have no power incidentally to abridge the term of a justice’s office by altering the bounds of counties; because what the legislature have no power to do directly, they cannot do indirectly. The proposition is undoubtedly true, when an exercise of their power is unqualifiedly forbidden. But when the prohibition is under qualifications merely, the case is entirely different. The alteration of counties may sever a town into such small appendages of different counties as to render its complete subversion by annexation to other towns, an act of decided expediency, with which I am not prepared to admit that the tenure of office should interfere. Both the cases cited, concede that the jurisdictional alterations may be made without limit, both as to territory and subject matter. All the powers of all the common magistrates in the state, for instance, might be abolished or transferred to the county judges. It is impossible to allow the constitutionality of such an indirect abolition of the office ; and to deny, at the same time, that the same thing may be incidentally done in respect to a few magistrates, by the exercise of another power which is admitted to be of itself, clearly constitutional. In the two cases cited, there was no necessity for contravening the consequences of exercising such a power. Justices were considered as town officers, a character which it was deemed essential to fix upon them in order to warrant the adjudication in The People v. Garey, 6 Cowen, 650, see also Gurnsey v. Lovell, 9 Wendell, 319, and Schroepel v. Taylor, 10 id. 196. And when Mr. Justice Sutherland remarked, 6 Cowen, 651, that the power of the legislature to erect new counties was subject to the constitutional limitation of the justice’s term, he evidently intended a case where the corporation to which his office pertained was saved. That was the case before him. And *584 the remarks of the chief justice in McCollum’s case should be taken with the same restricted application. Had the power of appointment for a certain time, been, in the case before us, granted in general terms, and the constitution had done nothing more, I agree that the legislature must have awaited the expiration of the time, before they could have given such an effect to the division of a county as to destroy the office. But we are no longer bound to carry out the full force of the general terms, when a clear convicting power is deducible from the context, either by express provision or necessary implication. 1 Story’s Comm, on Const. Law, 407, § 424. In the state constitution, such powers indicated in both ways, are abundant. Besides the express power, recognized as we have seen, to create new counties, it is of the very nature of legislation to control judicial jurisdiction, and even subvert or dissolve the substratum, the municipal corporation to which it is incident. It is scarcely necessary to observe] that in construing the language of a constitution, we have nothing to do with arguments ab inconveniente for the purpose of enlarging or contracting its import. Id. 408, 409, § 425 and 426. “ The only sound principle is to declare ita lex scripta est, to follow and to obey.” Id. 410.
We are all of opinion that there must be judgment of ouster.