## JAMES COUNTY *v.* HAMILTON COUNTY.

### (*Knoxville.* October 4, 1890.)

1. INJUNCTION. *Dissolution at chambers. Notice.*
   Upon notice thereof for less period than five days, the Chancellor has no jurisdiction of motion to dissolve injunction at chambers.

2. SAME. *Motion to dissolve entertained in term without notice.*
   In term the Chancellor may dispose of motion to dissolve made in vacation without notice, and he may appoint special term for that purpose.

3. CONSTITUTIONAL LAW. *Legislature has no power to abolish and partition counties.*
   The Legislature has not power, by its mere act, without a vote of the people to be affected, to abolish an established county and divide its territory among the adjoining counties.

   Case cited: 12 Ill., 391.

   Question reserved: Can a county be abolished and its territory partitioned among other counties even with the consent of the people?

---

FROM JAMES.

---

Appeal from Chancery Court of James County. W. H. DeWitt, Sp. Ch.

P. B. Mayfield, S. P. Gaut, D. A. Gaut, and J. E. Mayfield for James County.

Shepard, Watkins & Bates for Hamilton County.

TURNEY, Ch. J. An Act of the Legislature, approved March 11, 1890, by its first section abolished the county of James, and restored its territory to the counties of Hamilton and Bradley, from which it had been formed in 1871.

This bill is filed charging that the Act of 1890 is unconstitutional and void, enjoining action under it, and asking that it be declared null.

On April 9, 1890, notice was served on complainant that on April 12, 1890, motion would be made to dissolve the injunction. The motion was made, and the decision reserved, but never rendered.

On May 14 the Chancellor ordered a special term of the Chancery Court to be holden on June 14, "to render such decree as may be necessary in the suit of James County against Hamilton County *et al.*, and for no other purpose."

At the special term the Chancellor held the Act to be constitutional, and retained the injunction in force until the question could be determined by this Court.

It is now objected that the Court was not authorized to entertain the motion to dismiss in the absence of notice of such motion to complainant. This objection is not well taken. Our statute provides: "A defendant may move to dissolve or modify an injunction in vacation before the Chancellor of the division in which the bill is filed, either for want of equity in the bill or upon the coming in of the answer to be heard upon certi-

fied copies of the bill or bill and answer; but five days' notice of such application shall be given to plaintiff or his solicitor."

"A motion to dissolve an injunction may be. made at any time upon answer or for want of equity on the face of the bill." Code (M. & V.), §§ 5194, 5195.

It is clear to us that the action of the Chancellor in ordering a special term was induced by two considerations:

*First.*—The notice to dissolve was insufficient— and, in fact, no notice—the law demanding that the plaintiff *shall* have five days' notice, while in this case there were only about three; and therefore there was no jurisdiction in the Chancellor to act out of term.

*Second.*—The matter being one of public importance, the Chancellor correctly determined to pass upon it as promptly as the law would allow. No notice of motion to dismiss in term time is necessary. The Chancellor may dismiss of his own motion. The order appointing the special term called attention directly to the purpose of the Court to make such decree as he thought necessary in this case, and was notice to the complainant that every step that could be taken in the cause would or might be asked for.

This brings us to a consideration of the constitutionality of the Act. Our Constitution, Article X., Section 4, ordains:

"New counties may be established by the Leg-

islature, to consist of not less than two hundred
and seventy-five square miles, and which shall con-
tain a population of seven hundred qualified vot-
ers.    No line of such county shall approach the
court-house of any old county from which it may
be taken nearer than eleven miles, nor shall such
old county be reduced to less than five hundred
square miles.    *    *    *    No part of a county
shall be taken off to form a new county, or a
part thereof, without the consent of two-thirds of
the qualified voters in such part taken off; and
when an old county is reduced for the purpose of
forming a new one, the seat of justice in said
old county shall not be removed without the con-
currence of two-thirds of both branches of the
Legislature, nor shall the seat of justice of any
county be removed without the concurrence of
two-thirds of the qualified voters of the county."

Article X., Section 4, contains all the provisions
on the subject of counties, county lines, etc.

From it it is clearly manifest the authority and
only authority conferred is to build up, and not
to pull down. It is equally apparent that it never
occurred to the framers that a county could be
destroyed or dissolved by an arbitrary Act of the
Legislature. The expression of the one thing is
the exclusion of the other.

If the Constitution is so careful of the rights
of old counties in taking from them fractions to
form new counties; if it is so watchful of the
rights of citizens in county seats, it follows that

it is also jealous of any power that might utterly destroy old counties. At the passage of the Act before us, James County was, in a legal sense, as much an "old county" as Washington or Davidson, and had all the rights of such.

In all the cases that have arisen in the State touching county lines, the reduction of counties to form new ones, the removal of county seats, etc., the Courts have invariably held to the restrictions of the Constitution.

If two-thirds of the qualified voters in the part taken from an old county to go to the formation of a new is required, why is not the same principle, derived from the same instrument—the Constitution—applicable to the effort to divide an old county into two parts, giving one part to Bradley and another part to Hamilton? If it requires two-thirds of the qualified voters of a county to remove its seat of justice to another point in that county, by what process of reasoning can we conclude that a seat of justice may by legislative enactment be divided between the seats of justice of two adjoining counties?

If the voters must by a two-thirds majority consent to a removal or to a detachment from one and attachment to another county by the terms of the Constitution, why is not the same rule applied to the purpose of dissolving a county, and then attaching its several parts to other counties, if it can be done at all?—a very doubtful question.

As we have seen, James County was regularly

16—5 ᴘ

formed and organized. It had built its court-
house, jail, and other public buildings; had its
officers in all respects as other counties. Now,
must all these be swept from it without the con-
sent of its people? Must the moneys expended in
the nineteen years of its existence go for nothing?
Of course these things must be if the Act is con-
stitutional.

The public buildings and improvements which
have been paid for, or its people yet to be taxed
to pay for, cease to be of use as public property,
while the money paid, or to be paid, is a total
loss to the tax-payers.

It is insisted that as the Constitution does not
prohibit by its terms the dissolution of a county,
therefore the Legislature may dissolve it. The
answer to this argument is, as we have already
intimated, that it was never intended that such
thing should be done, unless, perhaps, by a vote
of the people (about which we intimate no opin-
ion), as in the case of the taking off a part of a
county to form a new one, which is a partial dis-
solution, and the only one provided for in the
Constitution.

A county is a government within a government,
and its voters must be consulted in all matters
pertaining to it. It is not created, nor can it be
dismembered or destroyed by an arbitrary legislative
breath. The Legislature having once granted its
consent, cannot of its mere motion withdraw it.
The county was made at the instance of the

James County *v.* Hamilton County.

people, and for its people, and can be changed
or abolished, when at all, only by their consent.
If the Legislature may dissolve one county and
divide it out amongst its neighbors, it may abolish
all, and destroy the State. It may divide Davidson
or Knox, and remove their county seats to any
other county by its legislative partition.

The sole purpose of the Constitution was to
build up and preserve, hence its restrictions about
legislative interference with organized counties.

It may be said to have been the policy of the
framers of the Constitution of 1870 to encourage
the creation of new counties, as it reduced the
approach to county seats of old counties in the
formation of new ones to eleven miles instead of
twelve, as ordained by the Constitution of 1834.

We are aware of but one case in the Union in
which the question here presented has arisen—
*The People* v. *Marshall*, 12 Ill., 391—in which it
was held: "The Legislature cannot abolish counties,
and form the territory of which they were com-
posed into one or more counties, without submitting
the Act to a vote of the inhabitants affected by
the change."

In that case the county of Gallatin had been
divided, and the county of Saline formed of part
of it. The Legislature undertook "to create the
county of Gallatin out of the counties of Gallatin
and Saline," in other words, to abolish Saline and
add its territory to Gallatin.

The Constitution of Illinois is in this respect
very similar to ours.

The fact that the question has only arisen in the two cases, goes to show that Legislatures have heretofore interpreted Constitutions as giving no such power, either by implication or in terms.

If desirable to abolish or change counties, the people interested ought to be consulted. Such are the spirit and policy of constitutional popular governments. They can and ought to be carried out.

The Legislature cannot do indirectly a thing not to be done directly.

To abolish a county and give its territory to others, is to take from the one and add 'to the others without the consent of the people to be affected. A Constitution which prohibits a small taking off, or appropriation, certainly protects against entire destruction. The act is void.

Reverse.