SULLIVAN, C. J.,
Dissenting. — I am unable to concur in the opinion of the majority of the court. The question involved in this cause is whether a certain act of the legislature entitled: “An act to create and organize the counties of Alta and Lincoln, to locate the county seats and to apportion the debt of Logan county,” is in conflict with the constitution. “A state constitution is an instrument of restriction and Limitation upon powers already plenary, so far as it affects the powers of the government and the objects of legislation.” (State v. Lancaster Co., 4 Neb. 537, 19 Am Rep. 641; People v. Draper, 15 N. Y. 545; People v. Flagg, 46 N. Y. 401.) It is a well-established principle that the law-making power of the legislature is supreme, subject only to the limitations imposed by the constitution. In other words, that which the constitution prohibits from being done determines the power of the legislature under it. (McMillen v. Lee Co., 6 Iowa, 391; People v. Blodgett, 13 Mich. 127.) It is also a *87 well-established rule that an express power to make laws is not necessary to enable the legislature to make them. The court is called upon, in this ease, to declare a solemn legislative enactment unconstitutional and void. Judge Cooley, in his work on Constitutional Limitations, page 192, says: “The power to declare a legislative enactment void is one which the judge, conscious of the fallibility of human judgment, will shrink from exercising in any case where he can conscientiously and with due regard to duty and official oath decline the responsibility.” Courts have not the power to declare acts of the legislature void simply because, in the opinion of the court, such acts are repugnant to natural justice and expediency. Mr. Cooley says on this point (Cooley’s Constitutional Limitations, 201, 202): “The rule of law upon this subject appears to be that, except when the constitution imposes limits upon the legislative power, it must be considered as practically absolute, whether it operates according to natural justice or not, in any particular case. The courts are not the guardians of the rights of the people of the state, except as those rights are secured by some constitutional provision which comes within the judicial cognizance.....It cannot run a race of opinions upon points of right, reason, and expediency with the law-making power.” Effect should be given to this act, unless it is clearly repugnant to the constitution. The rule of decision is, where the constitutionality of a statute is questioned, if there is any doubt, such doubt must be resolved in favor of the statute. “To doubt is to sustain the act.” (Sedgwick on Statutory and Constitutional Law, 409; Copley’s Constitutional Limitations, 88, 192, 222, 230; Winch v. Tobin, 107 Ill. 212; Wulff v. Aldrich, 124 Ill. 592, 16 N. E. 886; Sharpless v. Mayor etc., 21 Pa. St. 164, 59 Am. Dec. 759, and note.) “It must be clearly, plainly and palpably in violation of the- constitution.” (Hess v. Pegg, 7 Nev. 30; Township of Mountclair v. Ramsdell, 107 U. S. 147, 2 Sup. Ct. Rep. 391; Morrison v. Springer, 15 Iowa, 304; Stewart v. Supervisors, 30 Iowa, 9, 1 Am. Rep. 241, 242.)
Construed by the light of the above principles and rules, is said act unconstitutional? That is the question. Article 18 of the constitution, entitled “County Organization,” contains all of the inhibitions upon the legislature in regard to the or *88 ganization of new counties. The first four sections of said article are quoted by Mr. Justice Huston, in his opinion; but he-bases his opinion upon the first and third sections thereof. The-fourth section of said article is substantially the same as section 1, article 7 of the constitution of Illinois, as to the area of counties, and is as follows: “No new county shall be established which shall reduce any county to an area of less than four hundred square miles; nor shall a new county be formed containing an area of less than four hundred square miles.” It was decided by the supreme court of illinois in People v. Marshall, 12 Ill. 392, that an act of the legislature abolishing two counties, and of their territory creating a new one, was not in conflict with said section, “either in letter or spirit.” As the people of Idaho adopted this provision of the constitution of Illinois, the rule is that they also adopted the judicial interpretation given to said section by the highest court of that state. (Hess v. Pegg, 7 Nev. 23; Leavenworth Co. v. Miller,. 7 Kan. 479, 12 Am. Rep. 425; Daily v. Swope, 47 Miss. 367.) The act in question is not repugnant to section 4. Mr. Justice Huston places great stress upon section 1 of said article 18, which section is as follows: “The several counties of this state, as they now exist, are hereby recognized as legal subdivisions of this state.” The learned justice states that he has been unable-to find a single case, in any of the states whose constitutions contain the above provision, where the legislative right to abolish a county has been upheld by the courts. I have been unable to find a single decision, from any of the states whose constitution contains said provision, where the courts have held. that said section was a prohibition upon the legislature, from abolishing a comity. If said section prohibits the legislature from abolishing a county, I submit, then, that it is a prohibition from changing the boundaries in any manner whatever, for-said section recognizes the counties of this state “as they now exist.” It is admitted by my associates that the legislature has. the power to organize new counties. If a new county is organized, it must be conceded that the boundaries of some county or counties must be changed, and that such county or counties so changed would not thereafter “exist” as it or they “existed” at the date of the adoption of the constitution. The. entire; *89 territorial limit of the state was included in eighteen counties, and if the counties must continue as they then “existed,” no new counties could be formed, unless the state acquired territory that was not within its limits at the date of the adoption of the constitution. If this section prohibits the legislature from abolishing a county, it prohibits the change of county boundaries in any manner and for any purpose. If this position is tenable, what becomes of the proviso of section 3 ? If by said section the counties of the state are made constitutional counties, they must each continue to exist as they “existed” at the date of the adoption of the constitution, or until the constitution is amended, permitting a change in their territorial existence or boundaries. Nearly every state constitution of which I have any knowledge recognizes the counties of such states; and many, if not all, state constitutions name each and every county of their respective states. The constitution provides for county government and county organization, but this of itself is not a prohibition upon the legislature from extinguishing a county government and establishing another in its stead, over the same territory, in connection with other territory. County government cannot be abolished by the legislature, so that the state and people would be deprived of it; and no effort has been made by the legislature to do away with county government. The mere recognition of a county by the constitution should not be construed into an inhibition on the legislature from abolishing it.
Section 3, article 18, provides as follows: “No county sba.1T be divided unless a majority of the qualified electors of the territory proposed to be cut off, voting on the proposition at a general election, shall vote in favor of such proposition; provided, that this section shall not apply to the creation of new counties. No person shall vote at such election who has not been ninety days a resident of the territory proposed to be annexed. When any part of a county is stricken off and attached ' to another county, the part stricken off shall be held to pay its relative proportion of all then existing liabilities.” By the proviso in said section it is declared that in the creation of new counties said section shall not apply. When applied to the creation of new counties, the constitution should be construed as- *90 though said section was not contained therein. The only prohibition placed upon the legislature in regard to dividing counties and changing county lines is contained in said section 3, and the prohibition therein contained does not apply to the creation of new counties. Section 3 is not to be considered, and is not applicable to the division of counties, made for the purpose of creating new ones. The power of the legislature is unrestricted, in the creation and organization of new counties, to the extent and out of such territory as it may deem best, so long as no county is created with an area of not less than four hundred square miles, which limitation is contained in section 4, article 18. It is maintained by Mr. Justice Huston that said section 3 is unhappily constructed, and that, strictly construed, the proviso would apply to the whole section. The rules of construction would need to be carried to an extreme limit to hold that said proviso does not apply to the whole section. The proviso is in very terse and plain English, and declares that “this section” shall not apply to the creation of new counties. It is too plain to require construction. It is claimed that the legislature did not construe said proviso to apply to all of said section, for the reason that “they made provision in the act under consideration for the apportionment of the debt of Logan county, as required by the clos-' ing paragraph of section 3.” Said entire section applies to the striking off of a part of one county, and attaching the part so stricken off to another county, then in existence. The effect of said section is to leave to the choice of the people, as expressed by their votes, whether they will be removed from one existing county to another. The last paragraph or sentence of said section is as follows: “When any part of a county is stricken off and attached to another county, the part stricken off shall be held to pay its relative proportion of all then existing liabilities of the county from which it is taken.” I do not understand why one of my associates claims that the legislature, by the act in question, apportioned the debt of Logan county, as required by the paragraph above quoted, when section 9 of said act is as follows: “All of the indebtedness of Logan county shall be paid by Lincoln county.” There is not an intimation in said act requiring that that part of Logan county taken, in eonnec *91 tion with Alturas county, to form Alta county, shall pay its relative proportion of all then existing liabilities of Logan county, but specifically requires Lincoln county to pay all of the indebtedness of Logan county. Said last paragraph of section 3 is not a prohibition on the legislature from apportioning the debts of the counties from which territory may be taken to organize new counties as may be just and equitable.
In the opinions of the majority of this court it is held that the words “new counties,” as used in the constitution, mean “additional counties.” I do not think that construction tenable. Had it been the intention of the framers of the constitution to confine the meaning of the word “new” to an increase in the number of counties, they would have used the word “additional,” or some term that clearly expressed the idea that the new counties to be created must increase the number of counties. In the case of People v. Dubois, 23 Ill. 548, and People v. Bangs, 24 Ill. 184, it was held that the legislature could increase the number of circuits, but that it could not deprive a judge of his office by creating a “new circuit” out of the territory from which such judge was elected, when such new circuit, so created, was not an additional circuit. The provision of the Illinois constitution, permitting the legislature to increase the number of circuits, is very different from the constitution of Idaho. Section 7, article 5, provides: “The state shall be divided into nine judicial circuits, in each of which one circuit judge shall be elected by the qualified voters thereof, who shall hold his office for a term of six years, and until his successor shall be commissioned and qualified: provided, the general assembly may increase the number of circuits to meet the exigencies of the state.” It will be observed that the state of Illinois was divided, by said section of the constitution, into nine circuits, and the legislature was authorized and empowered to increase the number of circuits to meet the exigencies of the state. Section 15 of the same article provides that, “whenever ■an additional circuit is created,” etc. The word “new” is used in said decisions to designate the circuit created by said act. The court held that a “new” circuit had been created, but that such “new” circuit was not an additional circuit; that the number of circuits were not increased; hence said act was re *92 pugnant to the constitution. Had the framers of the constitution intended that the legislature should be confined to the creation of additional counties, apt words would have been used, and the proviso in section 3 would have read: “Provided, that this section shall not apply to the creation of additional counties.” Webster defines the word “new” to mean “having existed but a short time”; “recently established.” A new county does not necessarily mean ah additional county. If three of the counties of the state should decrease in population and wealth, so as not to be able to sustain a county government, or for any other reason the legislature should conclude that it was for the best interest of the people to create a new county out of the territory of the three, such county, so created, would be a new county, within the meaning of the term “new county” as used in the constitution. Only two sections of the constitution refer to the creation of new counties, to wit, sections 3, 4, article 18. In section 3 the -word “new” is used as follows: “Provided, that this section shall not apply to the creation of new counties.” And in section 4 as follows: “No new county shall be established; .... nor shall a new county be formed containing less than four hundred square miles.” Said section 3 cannot apply to a legislative act creating a new county. The constitution places but one restriction upon the legislature in the creation of new counties, and that is that no county shall be created with an area of less than four hundred square miles. Such new county need not necessarily be an additional county. Mr. Justice Morgan, in his opinion, says: “It could not have been desired to abolish'the counties of Alturas and Logan. Nothing is said in the act about abolishing the counties, and they do not seem to be abolished.” Would not said counties have been abolished, provided said act had been held constitutional, as effectually as if said act had contained a section, or several sections, directly declaring them abolished? They certainly would.
The assessment-roll of Alturas county for 1888 (before Logan and Elmore counties were created from Alturas) shows the total assessed valuation of Alturas to have been $3,837,362. A careful estimate, made by-the assessor, shows that about $975,000 of that.amount was in the present county of Alturas. .The as *93 sessment-roll of Alturas county for 1889 shows the assessed valuation to have been $814,387; assessed valuation for 1890, $649,104; being a reduction, for one year, of $165,283, and for two years a reduction of $326,896. This shows a decrease in the taxable property of Alturas county for the years 1889 and 1890 of about thirty-three per cent. . In population, the loss in Alturas county, since 1888, is about thirty-three per cgnt, as indicated by the election returns. This great decrease in population and wealth may have been one of the causes that induced the legislature to pass the act under consideration. I only state these facts, by way of reply to the proposition of the majority of the court, as to one of the causes or reasons the legislature had for passing said act. This court “cannot run a race of opinions upon points of right, reason, and expediency with the law-making power,” as stated by Judge Cooley, supra. This court has no authority to inquire into the motives of the legislature in the passage of the act under consideration. (Wright v. Defrees, 8 Ind. 298; Attorney General v. Supervisors, 33 Mich. 289; Cooley’s Constitutional Limitations, 223, and note 4.) Because the legislature passed an act dividing Ada county, and erected from the part segregated a new county, to be called “Canyon county,” and submitted the question to a vote of the people living in the segregated territory, it is suggested in the opinion of one of my associates that the legislature placed one construction upon the constitution for the people of Logan county, and a different construction for the people of Ada county. If the legislature has the power to create new counties without submitting the question to a vote of the people, the fact of having submitted the question to a vote of the people is no reason for charging the legislature with interpreting the constitution one way when applied to one county, and directly the opposite when applied to another. There is nothing in the constitution requiring the legislature to exercise all the power which it has. It is claimed that a dangerous power would be left in the hands of the legislature if it had the power to create new counties out of any territory it might deem best. Had the framers of the constitution so thought, they no doubt would have inserted in the constitution such provisions as the constitutions of Illinois or Tennessee contain, prohibiting the *94 legislature from dividing a county, for any purpose, without a vote of the people. On the contrary, they were very careful to provide that section 3, article 18, should not apply to the creation of new counties, that being the only section that prohibits the legislature from dividing a county, without first submitting the question to a vote of the qualified electors. This court is not authorized to so interpret the constitution as to place restrictions upon the legislature which are not warranted by the plain meaning and intent of the constitution. The entire matter of the creation of new counties has been left by the people in the hands of the legislature, with but one restriction, to wit, that no county shall be made to contain an area of less than four hundred square miles. This indicates that the people were not afraid of the “mutatious whims of each succeeding legislature,” or that “gerrymandering will assume the position of an exact science.” Nor should this court “suppose” that the legislature would be “moved and instigated by the devil” to divide any county in this state, and for that reason attempt to place restrictions or inhibitions on the legislature which the constitution does not clearly warrant. Other departments of our government are, as I believe, quite as apt to be controlled by “mutatious whims” and “moved and instigated by the devil” as is the legislative branch. It has been held by the supreme court of North Carolina that the legislature had the general power to alter the boundaries of counties, to create new ones or to destroy a county altogether. (Mills v. Williams, 11 Ired. 558; Granville Co. v. Ballard, 69 N. C. 18.) The people of North Carolina have adopted a new constitution since said decisions were rendered, and did not prohibit therein the legislature from abolishing a county whenever it saw fit to do so. The people were not afraid to leave that power with the legislature. It has been held by the supreme courts of other states that the legislature, under constitutions similar to that of Idaho, had the power to abolish, alter, modify and create counties. (State v. McFadden, 23 Minn. 40; Opinion of Judges, 55 Mo. 296; Division of Howard Co., 15 Kan. 194; Respublica v. McClean, 4 Yeates, 399; State v. Choate, 11 Ohio, 511; In re Hinkle, 31 Kan. 712, 3 Pac. 531; Attorney General v. FitzPatrick, 2 Wis. 542-548; 1 Dillon on Municipal Corporations, *95 secs. 46, 63, 65.) The constitution of Illinois, in force at the time of the rendition of the decision of People v. Marshall, supra, and the constitution of Tennessee in force at the dates of the decisions of Gotcher v. Burrows, 9 Humph. 585, Marion Co. v. Grundy Co., 5 Sneed, 492, and James Co. v. Hamilton Co., 89 Tenn. 237, 14 S. W. 601, prohibited the legislature from dividing a county for any purpose whatever, without submitting the question to a vote of the people, and are not in point. The opinion of the court in James Co. v. Hamilton Co., supra, was rendered October 4, 1890, and the court says: “The fact that the question [as to the power of the legislature to abolish a county] has only arisen in two cases (People v. ■MarshallK supra, and the case at bar) goes to show that legislatures have heretofore interpreted constitutions as giving no such power, either by implication or in terms.” This decision should be given no weight as authority in this case for the following reasons : 1. It proceeds upon the theory that a state constitution is a grant of power to the legislature, and that, unless the power to abolish a county is granted the legislature does not possess the power, when it is a well-established principle that a state constitution is an instrument 'of restriction and limitation upon powers already plenary. 2. The constitution of Tennessee prohibits the change of county lines for any purpose, •without a vote of the people, either for the creation of new counties or otherwise. 3. Prior to said decision, the point as to whether the legislature had the power to abolish a county had been decided by the supreme courts of several different states (authorities cited, supra), while the court says: “The question has arisen in but two cases,” to wit, the Illinois case, and the case then before that court. The only states whose highest courts have held that the legislature had not the power to abolish a county for the purpose of creating a new one, that 1 have any knowledge of, are Illinois and Tennessee; and the constitutions of said states prohibit, in terms, the legislature from dividing a county for the purpose of creating a new county of otherwise, without submitting the question to a vote of the people. When the constitution of Idaho was framed it was known that the legislature had exercised the power of changing *96 the boundaries of counties and creating new ones, and that certain consequences resulted therefrom. The framers of the constitution saw fit to prohibit the legislature from striking off a part of one county and attaching it to a county then in existence, without submitting the question to a vote of the people residing in the part to be stricken off, but expressly provide that •such inhibition shall not apply to the creation of new counties. Section 2, article 7 of the Illinois constitution was incorporated into section 3, article 18 of the Idaho constitution; and the framers of the constitution knowing the construction that the supreme court of the state of Illinois had placed upon said section in People v. Marshall, supra, they inserted a proviso, thus clearly indicating that they did not intend to adopt the inter-. pretation given said section by said court.
In interpreting the constitution this court should not apply a prohibition on the legislature which the constitution itself ■declares shall not be a prohibition. .The convention that framed our constitution included some of the most eminent lawyers of the state. With the constitutions of other states be-, fore them, and the interpretations thereof as given by the courts of last resort, they did not place any restrictions on the legislature in the creation of new counties except as to area. I.est ■section 3 should be interpreted to apply to the creation of now counties, the framers of the constitution were very careful to insert a proviso, thus showing the intention to leave the entire matter of the creation of new counties with the legislature, unrestricted, except as to area. The intention of the framers of ~the constitution is manifest, from the manner in which section 3 deals with the subject, in making provision for existing liabilities of the counties, when a part of one is stricken off and attached to another. Was the creation of Alta and Lincoln ■counties a creation of new. counties, within the meaning of that term as-used in the constitution? As before shown, the creation of a new county does not necessarily mean an additional county. A "new county” is a new county organization, erected •over and upon territory which had not before comprised, in itself, a county. Alta county included a part of the territory of what was formerly Logan, and all of the territory of what was *97 formerly Alturas. Lincoln county included a part of what was formerly Logan county, but not the whole. Hence Alta and Lincoln counties are new counties, within the meaning of that term as used in the constitution. A new county organization was by said act erected over territory, which had not before ■comprised, in itself, a county. If the legislature has not the power to create new counties by dividing a county as Logan was divided in the creation of Alta and Lincoln counties, then the proviso of section 3 is not the.controlling part of said section, ■and is given no effect whatever in the interpretation of said section; and, to apply the quotation o’f Mr. Justice Huston, it would stand in said section, “like counters in a barber’s shop, as much for mock as mark.” The act in question does unite a part of what was formerly Logan county to what was formerly Alturas, but within the meaning of section 3, article 18, it does not strike off a part of Logan county and attach it to Alturas, because Logan and Alturas counties were, by said act, extinguished. The legislature, by this act, does not undertake to do indirectly what it was prohibited from doing directly. Two new counties were created out of Logan and Alturas counties. A part of Logan county was not stricken off and attached to Alturas county; but a new county was created, and the legislature, in creating said new counties, used constitutional means, and effected a constitutional object, to wit, created two new counties.
It is contended that the office of clerk of the district court ■of the county of Logan was created, and the term of office fixed by the constitution, and that the defendant was legally ■elected to said office, and that he could not be legally deprived thereof except by the expiration of the term for which he was elected. The fact is that the defendant held his office by appointment made by the governor. From our view of this case that makes no difference. In the case of Respublica v. McClean, 4 Yeates, 399, the court held that the commission of the officer became void by the political annihilation of that part of the county for which the officer was commissioned. “Article 5, section 16, provides for a clerk of the district court for each county in the state, and fixes the tenure of office; yet both office and tenure of the clerk of the district court in and for a *98 particular county are dependent upon the existence of such county.” If the county is extinguished by the legislature, the office fails. (People v. Morrell, 21 Wend. 577; In re Hinkle, 31 Kan. 712, 3 Pac. 531; State v. Choate, 11 Ohio, 511; Hagerty v. Arnold, 13 Kan. 367.) County officers have no such vested right to their offices as would, under the constitution of Idaho, prohibit the legislature from abolishing a county in the creation of a new county. (Laramie Co. v. Albany Co., 92 U. S. 307.) The case of Rock Island Co. v. Sage, 88 Ill. 589, is-not in point, for the reason that the constitution of Illinois prohibits the legislature from changing county lines without, submitting the question to a vote of the people. Section 2, article 7, is as follows: “No county shall be divided, or have-any part stricken therefrom, without submitting the question to a vote of the people of the county, nor unless a majority of all the legal voters of the county voting on the question shall vote for the same.” In that' case the legislature undertook to change the lines of a county without submitting the question to a vote of the people, which act was expressly prohibited by said section of the constitution. The proposition which Mr. Justice Huston mentions as having been advanced by counsel, to wit,, that the provisions of the constitution are only applicable when in the judgment of the legislature it is expedient to make them so, is a proposition that I have not been able to find advanced in any of the briefs submitted in this case, and is one that I did not hear advanced, or even intimated, in the oral argument of this cause. - The counsel on both sides of this causfr are, as I believe, too eminent and honorable to advance such an infamous proposition. In the case of Edwards v. Railway Co., 13 Colo. 59, 21 Pac. 1011, the court says: “The view that a, •solemn legislative provision is a useless and lifeless thing should be entertained -when no reasonable intendment can be fairly deduced therefrom after diligent and industrious search, aided by all pertinent rules of statutory interpretation.” A reasonable intendment can be fairly deduced from the act in question, and said act can be construed to stand without the slightest impingement on the provisions of the constitution. The act -in question is not repugnant to any provision of the constitution, and the writ should issue as prayed for by the relator.