[No. 4034.]

FROST ET AL. v. PFEIFFER ET AL.

1. CONSTITUTIONAL LAW—NEW COUNTIES.

The act of 1899, Session Laws, 1899, page 359, under the title " to establish the county of Teller and the temporary county seat thereof, providing for the appointment of its precinct and county officers, fixing the terms of court therein, and attaching the same to certain congressional, senatorial, representative, judicial and normal districts " is not in contravention of section 21, article 5 of the constitution, providing that no bill shall be passed containing more than one subject, which shall be clearly expressed in the title. The one subject of the act was " to establish the county of Teller," and each of the provisions following as specified in the title relate to the necessary incidents in establishing a new county; and the fact that certain of the incidents to the establishing of a new county are specified in the title does not limit the act to the particular matters detailed and exclude other matters necessary to the general purpose of the act.

2. STATUTORY CONSTRUCTION—ACT CREATING NEW COUNTY.

An act to create a new county which fixes the boundaries of the new county; its temporary county seat; provides for the appointment of county and precinct officers; fixes the terms of district and county courts; designates the congressional and other districts to which it is attached; assigns it to a class for the purpose of fixing the fees of its officers and provides for transcribing the records of the old counties so far as they affect the title to property in the new county ; contains sufficient legal provisions, germane to the subject, to effect the purpose of the legislature in passing it.

3. CONSTITUTIONAL LAW—NEW COUNTIES—APPOINTMENT OF OFFICERS.

The fact that an act creating a new county contains provisions for appointment of officers in an unauthorized manner does not invalidate the act, since section 9, article 14 of the constitution contains self-executing provisions under which the officers can be appointed.

4. SAME—FIXING FEES OF OFFICERS.

The assignment of a new county by the act creating it to a certain class for the purpose of fixing the fees of its officers, is not special legislation in the meaning of the constitution. It will be assumed that the legislature classified the county according to its population.

5. CONSTITUTIONAL LAW—NEW COUNTIES.

Section 3, article 14 of the constitution which provides that " no part of the territory of any county shall be stricken off, and added to an adjoining county without first submitting the question to the qual-

ified voters of the county from which the territory is proposed to be stricken off, nor unless a majority of all the qualified voters of said county, voting on the question, shall vote therefor," does not restrict the power of the legislature to create new counties from territory embraced in one or more existing counties.

6. CONSTITUTION—CONTEMPORANEOUS LEGISLATIVE CONSTRUCTION.

A construction placed upon a constitutional provision by a contemporaneous legislature is not controlling upon the courts, yet in cases of doubt and ambiguity it is entitled to great weight.

*Appeal from the District Court of Arapahoe County.*

THE late general assembly passed an act creating the county of Teller out of territory embraced within the counties of El Paso and Fremont, which is entitled "A bill for an act to establish the county of Teller, and the temporary county seat thereof, providing for the appointment of its precinct and county officers, fixing the terms of court therein, and attaching the same to certain congressional, senatorial, representative, judicial and normal districts." By this act the boundaries of the new county are established, and its temporary county seat named. It provides that the county and precinct officers of the respective counties of El Paso and Fremont, residing in that portion of the territory of those counties from which Teller county is carved, shall be respectively the officers of the latter county for the terms for which they may have been elected or appointed; that the governor shall appoint such other officers as may be necessary to carry on the county government of the new county, who shall hold until the next general election. It also provides for terms of the district court in the new county, establishes a county court and its terms, provides what causes then pending in either of such courts in the counties of El Paso and Fremont shall be transferred to the corresponding courts of Teller county. There is, also, provision for a ratable division between those counties and Teller, of the moneys in the treasuries of El Paso and Fremont counties, or which shall be collected or realized from the revenues of 1898, or other sources; that moneys in the hands of the treasurers of those counties, belonging to school districts within the boundaries of the county of Teller, shall

be paid over to the treasurer of the latter, and that the indebtedness of El Paso and Fremont shall be apportioned between the three ratably. It designates the respective congressional, senatorial, judicial, normal and representative districts to which the new county is attached. It also provides for the adjustment of the revenue and indebtedness between the three counties by the county commissioners thereof; for appeals from their action with respect to these matters, and the appointment of an arbitrator for the purpose of making such adjustment in case they cannot agree; empowers the board of commissioners of Teller county to secure the necessary transcripts of record affecting the title to property in the new county, and establishes the fees and compensation of all county, precinct and other county officers of the latter county.

The question of creating the new county was not submitted to the vote of the qualified electors of the counties of El Paso and Fremont, nor was any provision for that purpose made. The governor appointed the defendants members of the board of commissioners for the county, and this action is brought by plaintiffs on behalf of themselves and other taxpayers of the county of El Paso similarly situated, to restrain them from organizing or exercising the functions of that office. Defendants demurred to the complaint, which was sustained, and the action dismissed, from which judgment plaintiffs appeal.

The contention of counsel for appellants is, that the act is unconstitutional. On behalf of appellees it is claimed that the act is constitutional, or, if it contains provisions which are not, enough legal ones remain to sustain the creation of the county, and that the question of its constitutionality cannot be raised in the manner attempted by appellants.

Messrs. GUNNELL & HAMLIN, Messrs. WELLS & TAYLOR, Messrs. COLBURN, DUDLEY & LEWIS, Messrs. REESE & MC-ARTHUR and Mr. J. C. HELM, for appellants.

Mr. CHARLES J. HUGHES, Jr., Mr. W. H. BRYANT, Mr. BRANCH H. GILES, Mr. E. C. STIMSON and Mr. B. F. MONTGOMERY, for appellees.

MR. JUSTICE GABBERT delivered the opinion of the court.

Counsel for appellants contend that the title adopted embraces more than one subject, or if it does not, limits the scope of the act to the particular matters detailed; that all others not within the title as expressed, cannot be upheld, and that part of the provisions of the act are illegal. Our constitution (sec. 21, art. 5) provides, " No bill, except general appropriation bills, shall be passed, containing more than one subject, which shall be clearly expressed in its title, but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed." This provision is mandatory, and legislation falling within its inhibition is ineffectual. The title to this bill, when analyzed with reference to the apparent different subjects named, indicates that its objects are:

1. To establish the county of Teller.

2. To designate the temporary county seat thereof.

3. To provide for the appointment of its precinct and county officers.

4. To fix the terms of court therein.

5. To designate the congressional and other districts to which it shall be attached.

From the object to be attained, as gathered from the title as a whole, its subject must be extracted. In order to establish Teller county, certain provisions must be made to enable it to perform its functions as one of the political divisions of the state. The title indicates that the bill which it heads is " A bill for an act to establish the county of Teller." This is the controlling purpose of the law. Each of the provisions following, as detailed in the title, relates directly to those necessary to legislate upon in establishing a new county, having but one object, namely, the creation of the county of Teller, and therefore, relates to but one subject. *Golden Canal Co. v. Bright*, 8 Colo. 144; *Div. Howard County*, 15 Kan. 194; *Blood v. Mercelliott*, 53 Pa. St. 391.

By entering into details in the title, it is claimed that the legislature has restricted the act to the particular matters so mentioned. No doubt a title may be so worded that it would restrict all legislation germane to the subject, to the ones specified; but that must appear affirmatively, or by necessary implication. The bill in question has but one object, embraces but one comprehensive subject, without any limitation, either expressly, or by implication, as to what minor subjects will be legislated upon in order to accomplish its object; it recites that its main purpose is to establish the county of Teller, and legislate upon other minor subjects necessary to effect that end, but contains no expression that these minor subjects are the only ones to be legislated upon.

Having reached the conclusion that the title to the bill contains but one subject, and that it does not limit its scope to the particular matters detailed, the inquiry on the branch of the case under consideration is limited to this one: Does the act contain sufficient legal provisions, germane to the subject, to effect the purpose of the legislature in passing it? By its provisions the boundaries of the new county are fixed; its temporary county seat named; provision made for the selection and appointment of its county and precinct officers; the terms of the district and county courts to be held at its county seat designated; the congressional and other districts to which it is attached specified; the class to which it is assigned for the purpose of fixing the fees of its county and precinct officers indicated; and provision made for transcribing the records of the counties of El Paso and Fremont, in so far as they affect the title to property situate in the new county. What other provisions are necessary in order to enable a new county to organize its government, and fully perform its functions? None are suggested, and it is, therefore, unnecessary to examine the remaining provisions of the act for the purpose of determining whether they be legal or not.

It is urged that the provisions in the act with respect to the selection and appointment of county and precinct officers, and the method adopted to fix their fees are illegal. Conced-

ing that the legislature had no authority to make provision
for the appointment of officers in the manner indicated, there
is a law under which these appointments can be made. Sec-
tion 9, article 14 of the constitution, empowers the governor
to make designated appointments in case of vacancies, which
appointees, in turn, are authorized to fill all others in county
and precinct offices, a provision which is self-executing, and
can be resorted to independent of any provision in the act on
this subject.

For the purpose of fixing fees, the new county is assigned
to a specific class. There is already a general law upon this
subject, which classifies all counties in existence at the time
of its enactment. The constitution empowers the legislature
to classify counties according to population for this purpose.
Section 15, article 14. We must assume that the legislature,
in passing the act of 1891, on the subject of fees, classified
the counties according to population, and that in ascertaining
the class to which the county of Teller should be assigned
for this purpose, the same rule has been adopted, which, by
reason of such constitutional authority, would in no sense be
special legislation, within the meaning of that term.

We conclude, therefore, that, stripping the bill of all its
provisions which might be illegal on account of constitutional
inhibitions, enough remain which are in no manner depend-
ent upon the illegal portions, when reinforced by the con-
stitution and general laws of the state, to effectuate the purpose
of the legislature in passing the act, namely, the equipment
and organization of a new county.

The important proposition presented and urged by counsel
for appellants, and upon which they principally rely for a
reversal of the judgment of the trial court, is the one relative
to the authority of the legislature to create a new county
without a vote of the people affected thereby. The follow-
ing provision of our constitution, section 3, article 14, which
reads " no part of the territory of any county shall be stricken
off, and added to an adjoining county, without first submit-
ting the question to the qualified voters of the county from

which the territory is proposed to be stricken off, nor unless a majority of all the qualified voters of said county, voting on the question, shall vote therefor," is relied upon in support of the position that a new county cannot be legally created, without an affirmative vote of the people of the counties from which the new county is formed. No other provision relative to the division or change in the boundaries of a county is found in our constitution, but it is claimed that the inhibition relative to the creation of new counties by the legislature, except the people interested vote therefor, is clear and explicit from the section of the constitution above quoted; and even if ambiguity exists, it is cleared away by the address which the framers of the constitution issued to the people, wherein they said, with reference to article 14, " We have provided that no portion of any county shall be stricken off, or any new county formed, without submitting the question to the electors of such county." In case of doubt, ambiguity, or uncertainty, the address to the people by the framers of the constitution, which purported to analyze its provisions, can be, and has been resorted to, for the purpose of clearing up such doubts, and ascertaining the real meaning and intent of those who adopted it; but it is not controlling, and can only be invoked as an aid under the conditions, and for the purposes, mentioned, for the constitution, and not the address, is the fundamental law of the state, and its meaning, if possible, must be extracted from its own language. Except for the address on the subject relative to the formation of new counties, we do not believe that a *bona fide* attempt on the part of the legislature to create a new county by an act having in view that object, could be seriously questioned, for, except as limited by the constitution, its power with respect to proper subjects of legislation is plenary. The constitution directs that no portion of a county shall be stricken off and added to an adjoining one unless the people of the county from which such territory is taken affirmatively sanction the act. Attach to the words employed on this subject their ordinary English significance, and what is the natural inference? That the

territory of one county cannot be annexed to a contiguous one already created, except the people of the county from which territory is taken, acquiesce therein by their vote. The section under consideration expresses this inhibition clearly, and to give it any other construction is to inject a meaning which its plain reading does not warrant, for, manifestly, the territory of one county cannot be added to an adjoining one unless the latter is in existence at the time of such change. Something cannot be added to nothing; in order to add, there must be something capable of receiving that which is to be treated as an addition; creating a new county is not adding territory to one already in existence, but calling one to that state. Suppose that from a portion of an existing county a new one is created, certainly, that is not adding territory to an adjoining county, for in that instance the portion erected into a new county constitutes the whole. Creating a new county and taking territory from one, and adding it to another already in existence, are entirely distinct and separate acts; accomplish different objects, the results of which are entirely dissimilar.

It is urged that the constitutions of Missouri and of this state are similar with respect to the provisions for the formation of new counties, and that on account of the fact that the constitution of Missouri was adopted a year previous to that of Colorado, and was consulted by the convention which adopted ours, and in many instances copied from, and that the address of the respective framers on the subject of new counties was the same, that the construction which the framers of the constitution of Missouri placed upon theirs is authority for a similar construction of ours. Section 4, article 9 of the Missouri constitution reads:

"No part of the territory of any county shall be stricken off and added to an adjoining county without submitting the question to the qualified voters of the counties immediately interested; nor unless a majority of all the qualified voters of the counties thus affected, voting on the question, shall vote therefor."

This section, although not a literal transcript of section 3, article 14 of ours, is identical in its terms and provisions, with this exception, that under the Missouri constitution the question of adding the territory of one county to that of another must be submitted to the qualified voters of both counties, while in ours it seems to be limited to a submission of the question to the voters of the county from which the territory is taken. Section 3 of the Missouri constitution contains, *inter alia*, this provision : "No county shall be divided, or have any portion stricken therefrom without submitting the question to a vote of the people of the county, nor unless a majority of all the qualified voters of the county or counties thus affected, voting on the question, shall vote therefor." This is a provision not found in ours, unless, in effect, it is the same as section 3, upon which appellants rely ; but the terms of the Missouri constitution just quoted are much more broad than ours, for by it the legislature is prohibited from dividing a county, or striking any portion therefrom, for any purpose, "unless a majority of all the qualified voters of the county or counties thus affected, voting on the question, shall vote therefor," which inhibition necessarily is a prohibition against dividing a county, or taking any portion therefrom, under any circumstances, for any purpose, unless the people affected thereby sanction the action by their vote, whereas, the limitation imposed by ours, only extends to an act which would strike territory from one and add it to an adjoining county—a difference which is so marked that a mere reading of the two makes it apparent, that with reference to the subject of the creation of new counties, the two constitutions are entirely dissimilar, and that the construction of the Missouri constitution by its framers, as given in their address, was correct, but cannot be considered an authority for a similar construction of ours, where the provisions of the two on this subject are so radically different.

Counsel for appellants place great stress upon the case of *The People v. Marshall*, 12 Ill. 391, in which the power of the legislature to create new counties, under the constitution

of that state, without submitting the question to the vote of the inhabitants affected by the change, is ably and exhaustively discussed, as an authority in support of their position that the same construction must be placed upon ours. The learned judge who wrote the opinion of the court in that case, after referring to the provisions of the constitution under consideration, said:

"No rational mind can doubt, after the perusal of these provisions, that it was the unequivocal intention of the convention that county lines already established should not be changed, except by the deliberate vote of the people who might be affected thereby. To secure this right, and to prohibit all such changes of county lines against the wishes of the people, was manifestly a cherished object of the convention on framing the constitution, and of the people in adopting it."

This being the conclusion reached, it followed, of course, that the legislature could not create a new county without submitting the question to a vote of the people affected by the change; but while this construction of the Illinois constitution is undoubtedly correct, the case is of no weight in our state, unless the two constitutions on the subject under consideration are similar in import. To demonstrate the difference between the two, it is only necessary to quote sections 2 and 4 of article 7 of the constitution of 1848, which was the one construed in the case of *The People v. Marshall, supra.*

"Sec. 2. No county shall be divided or have any part stricken therefrom, without submitting the question to a vote of the people of the county, nor unless a majority of all the legal voters of the county, voting on the question, shall vote for the same."

"Sec. 4. There shall be no territory stricken from any county, unless a majority of the voters living in such territory shall petition for such division. * * *"

From these provisions it is plain that the legislature could not create a new county without a vote of the people in-

terested, for by section 2 it was expressly provided that no
county could be divided, or have any portion of its territory
stricken therefrom without submitting the question to the
people of the county which it was proposed to divide, or from
which territory was to be taken, and as a further limitation
upon the power of the legislature, section 4 required that be-
fore territory could be stricken from a county for any purpose,
or under any circumstances, a majority of the voters living in
the territory proposed to be stricken off must petition there-
for. With these express limitations, it is clear that a new
county could not be created by an act of the legislature alone,
for by so doing, it would effect that which the constitution,
in express terms, prohibited, namely, a division of a county, or
change in its boundaries, unless the people interested sanc-
tioned the act in the manner indicated. No such limitation,
however, is to be found in our constitution, save with refer-
ence to striking territory from one county and adding it to
another. It is not amiss to note, that in the case of *People
v. Marshall, supra,* and *People v. George* (an Idaho case also
cited by counsel for appellant, and found in 26 Pac. Rep. 983),
there was a plain attempt on the part of the legislature to
evade the constitution in each instance, and accomplish by in-
direction that which was directly prohibited. In the Illinois
case the counties of Gallatin and Saline were abolished, and
from their territory the county of Gallatin created, which
included exactly the territory formerly embraced in both, the
effect of which was to attach Saline to Gallatin without the
sanction of the people of the former. In the Idaho case,
there was, also, a plain attempt on the part of the legislature
to evade the following constitutional provision of that state:
"No county shall be divided, unless a majority of the qualified
electors of the territory proposed to be cut off, voting on the
proposition at a general election, shall vote in favor of such
division, provided, that this section shall not apply to the
creation of new counties," by establishing the county of Alta
out of the county of Alturas and part of the contiguous ter-
ritory of the county of Logan, and from that remaining of

the latter, the county of Lincoln; so that the counties of Alta and Lincoln included exactly the territory formerly embraced in the counties of Alturas and Logan, but with boundaries between, different; so that the effect was to take from Logan a part of its territory and add to that of Alturas, which was expressly prohibited by the constitution, and could not be evaded under the guise of creating new counties. The mere statement of the facts in the Idaho case, in connection with the constitutional provision mentioned, plainly demonstrates that the supreme court of Idaho was correct in holding that "no means can be constitutional which effect an unconstitutional object." No such question is presented in the case at bar; there is no attempt at evasion; no effort to do that indirectly which could not be accomplished directly, but a new county created out of territory partly embraced in that of El Paso and partly in Fremont, which the legislature possessed the plenary power to do, for the simple reason that the constitutional provision with respect to taking territory from one county and adding it to an adjoining one is not thereby violated.

Another matter which it is proper to notice in connection with the construction of the constitutional provision under consideration is the contemporaneous construction thereof given by the legislative department of the state. It is a fact of which we take judicial notice, for it appears in the laws of the state, that the first legislature which convened after the adoption of our constitution created no less than four new counties, without in any manner submitting the question to the people directly interested. It is a matter of history, that several members of this general assembly had been members of the constitutional convention. Subsequent legislatures have assumed the same authority by the creation of new counties in the same manner, in some of which, at least, those who assisted in framing the constitution were, also, members. The power of the legislature in this respect has never been questioned until the present case. Contemporaneous legislative construction of the fundamental law, while not controlling

upon the courts, yet in case of doubt or ambiguity, is entitled to great weight, as expressive of the views entertained by those of the meaning of that law whose mandates they are bound to observe. *Cooper Mfg. Co. v. Ferguson,* 113 U. S. 727; *People v. Le Fever,* 21 Colo. 218.

Measured by this rule, it follows, that if the plenary power of the legislature with respect to the creation of new counties was doubtful, that doubt must yield to the construction which the general assembly has given it from time to time. We are clearly of the opinion, however, that the legislature had the power to create the new county without submitting the question to the vote of the people of El Paso and Fremont counties. This being the conclusion reached, and a disposition of all the questions raised by appellants, it is not necessary to consider those raised by appellees. The judgment of the district court is affirmed.

*Affirmed.*

CHIEF JUSTICE CAMPBELL, though hearing the oral arguments, did not participate in the decision.