[No. 4869.]

SCHOOL DISTRICT No. 1 IN THE CITY AND COUNTY OF
DENVER v. SCHOOL DISTRICT No. 7 IN THE
COUNTY OF ARAPAHOE.

[No. 4871.]

SCHOOL DISTRICT No. 1 IN THE CITY AND COUNTY OF
DENVER v. SCHOOL DISTRICT No. 35 IN THE
COUNTY OF ARAPAHOE.

1. School Districts—Creating New Counties—Adjustment of Property Rights—Constitutional Law—Retroactive Law.

Session Laws 1901, pages 133 and 138, amended by Session Laws 1903, pages 159 and 164, creating the counties of Adams and South Arapahoe, and providing for adjusting their relative property rights with the city and county of Denver, and for ascertaining the compensation which should be paid by School District No. 1 in the city and county of Denver to other school districts in said counties of Adams and South Arapahoe, is not in contravention of section 12 article 15 of the constitution, which declares that the general assembly shall pass no law which imposes upon the people of any county or municipal subdivision of the state a new liability with respect to transactions or considerations already past. Said article of the constitution is not applicable to municipal corporations or governmental subdivisions of the state. And said acts of the. legislature are not retroactive.

2. Creating New Counties—School Districts—Title of Act.

The titles of the acts (Session Laws 1903, pages 159 and

164), being "An act to amend an act to establish the county of * * * " are sufficient to include the provisions for the reorganization of school districts and changing the boundary lines of said districts to correspond with the boundaries of the new counties created, and adjusting the property rights of the new districts and providing a method of determining the amount of indebtedness due from one district to another.

**3.  School Districts—Certifying Tax Levy—Mandamus.**

School District No. 1 of the city and county of Denver having certified, as required by statute, to the city council, acting as a board of county commissioners, the number of mills necessary to be levied for such school district for the year, prior to the determination of the amount of indebtedness due from said District No. 1 to Districts Nos. 7 and 35 in the county of Arapahoe, and no provision having been made in such levy for said indebtedness, mandamus will not be issued requiring said District No. 1 to pay said indebtedness out of the fund raised by said levy, but a writ of mandamus may be issued requiring the school board, at the time for making the next certificate for levy of taxes, to certify a special levy or to include in its special levy for ordinary purposes sufficient to pay said indebtedness.

**4.  Mandamus—Pleading—Alternative Relief—Amendment.**

Where no alternative writ of mandamus is issued but the cause is heard upon notice and petition for a peremptory writ, the fact that the petition asks for alternative relief is not fatal to the application.  And the necessary amendments may be made in the pleading and process to give the petitioner the proper relief.

*Error to the District Court of the City and County of Denver.*

Mr. William B. Tebbetts and Mr. H. M. Munroe, for plaintiff in error.

Mr. John A. Rush, for defendant in error, School District No. 7.

Mr. T. E. Watters and Mr. C. M. Kendall, for defendant in error, School District No. 35.

Mr. Justice Campbell delivered the opinion of the court.

Three applications for writs of mandamus, made separately in the district court, were there consolidated and tried as one action, and the three distinct writs of error sued out of this court to review the judgments of the district court rendered upon them were likewise consolidated and heard at the same time in this court. The material facts and principles of law applicable in two of the causes are substantially identical, and they will be discussed and determined in this opinion. The difference in the procedure taken below in the third case, as well as some difference in its facts, calls for its disposition in a separate opinion. A brief statement of the salient facts presents the legal questions raised.

The general scheme of our general assembly, at its 13th regular session, to grant to the former city of Denver home rule, involved the dismemberment of old Arapahoe county and several municipalities and school districts situate therein, and the creation of new counties, municipalities and school districts out of the same territory. This general plan was embodied in what is now called the twentieth article of the constitution, and in various acts of the 13th and 14th general assemblies. Among the changes thus wrought were new and different boundaries of the four school districts concerned in the pending proceedings and the transfer of one of them to the newly created county of Adams, and two of them to the new county of Arapahoe, while district No. 1 was put into the new city and county of Denver. Before such changes occurred, they were all school districts within the old county of Arapahoe—school district No. 1 operating under a special charter; the other three, Nos. 7, 35 and 98, having been organized under the general school laws of the state. By such changes, certain of the territory and property of the three school districts operating under the general

laws were taken from them and added to, and became part of, school district No. 1, theretofore existing under a special charter, but thereafter to be governed by the general school laws. Provision was made by the statutes (found in the Session Laws of 1901 at pages 133 and 138, and 1903 at pages 159 and 164) for adjusting their relative property rights and ascertaining the compensation which should be paid by school district No. 1 to the other school districts for the property which it thus acquired from the others. The proceedings which such acts furnished for this purpose were duly instituted by the creditor school districts, to which the debtor district was made a party, and such proceedings, prosecuted strictly in accordance with the method there prescribed, resulted in an ascertainment of the indebtedness due, which was properly made known to the parties interested.

School district No. 1 refused to pay the amount of the claims upon the ground, as then stated, that the statutes, under which they were fixed, were unconstitutional. After demands by the creditor school districts for payment, and a refusal by the debtor, these proceedings in mandamus were begun to compel district No. 1 either to pay the claims in cash, as the law specifically required, or, if the debtor had no funds in its treasury applicable to their payment, to levy a tax to pay them.

The two applications herein considered were upon petition supported by affidavit and upon due notice to the respondent, as our code authorizes, and no alternative writ was issued. Issues of fact were joined and a trial had before the court without a jury, resulting in findings in favor of the petitioners below (defendants in error here), and upon the findings a peremptory writ of mandamus was issued commanding the school district to pay out of the

special fund, realized from the special levy of 1903 and already in its treasury, the amount of the claims. To review that judgment, school district No. 1 has brought the cases here by writ of error.

1. The refusal of the respondent to pay these claims was based upon the unconstitutionality of the statutes under which they were ascertained. Numerous grounds of invalidity were then specified, most of which have been, by this court, decided untenable.—*City Council v. Board of Commrs., ante,* p. 1. Two objections to their validity, not then passed upon, are now pressed in argument. It is said, first, that the act is in contravention of section 12 of article 15 of our constitution, which declares that the general assembly shall pass no law which imposes upon the people of any county or municipal subdivision of the state a new liability with respect to transactions or considerations already past. The sufficient answer to this contention is, that article 15 is not applicable to municipal corporations or governmental subdivisions of the state or county. And an act, such as we are now considering, is in no sense a retroactive law.—*State v. Dickerman,* 16 Mont. 278; *Board of Education v. State,* 64 Kan. 6; *New Orleans v. Clark,* 95 U. S. 644; *Louisiana v. Wood,* 102 U. S. 294; *Read v. Plattsmouth,* 107 U. S. 568.

2. It is also said that the provisions of the various acts with reference to the adjustment of property rights of school districts are not germane to, and not clearly expressed in, the title of an act which reads, "An act to amend an act to establish the county of ———," etc. There is no merit in this point. Our constitution and general laws recognize that school districts are subordinate divisions of counties for school purposes. An act to establish a county may—indeed, should—contain provisions

for the organization of school districts. And legislation which relates to the creation, consolidation, modification or change of boundaries of school districts, or imposes a burden or debt on one district in favor of another, and prescribes methods for determining the extent or amount thereof, is clearly within the title of an act which relates to the creation of a county in which such districts lie.—*Frost v. Pfeiffer,* 26 Colo. 338, 344; *El Paso Co. v. Teller Co.,* 32 Colo. 310.

3. Plaintiff in error, in its brief, says that it must be admitted that, if the amended act of 1903 is constitutional—and we have just said that it is—the claims are valid ones which, in some manner, must be paid. The important question then is, was the judgment of the court below justified by the facts? We think the particular judgment entered was wrong. By general law it is made the duty of school districts, on or before the day designated by law for the board of county commissioners of each county to levy the requisite taxes for the then-ensuing year, to certify to such body the number of mills per dollar which it is necessary to levy on the taxable property in the district to raise a special fund for school purposes.—Mills' Ann. Stats., sec. 4032. School District No. 1, on the 9th day of November, 1903, at the time designated by law, so certified to the city council of the city and county of Denver, acting under the new charter as a board of county commissioners for the levy of taxes. At that time the appraisers who were appointed to adjust the property rights between the different school districts had not acted, and their findings were unknown. The board of directors of School District No. 1 doubtless knew of this unliquidated claim for compensation, and might have anticipated its extent and provided, in advance, for its satisfaction. But, apparently in good faith,

its members questioned the legality of the acts which imposed the burden and provided for its ascertainment, and for this reason, and because the debt was not fixed, they did not, in estimating the amount of money needed for the year 1904, include in the certificate to the commissioners anything except a levy sufficient to raise funds to defray the ordinary expenses of the district and to cover costs of buildings already contracted for. It clearly appears from the record that, included in such certificate to the board of commissioners and the levy made by that body in accordance therewith, no provision was made for paying these claims, and that the special fund of district No. 1 out of which the district court ordered them to be paid is not sufficient even to cover the ordinary school expenses of that district for the current year. That being so, the judgment cannot stand.

But it is argued that, since there are only two funds belonging to school districts, one the general fund from the general levy made by the board of county commissioners upon all the property in the county solely for the support of schools (Mills' Ann. Stats., sec. 4028); the other a special fund from a levy created by the same board on the certificate of the school districts on the property of the respective districts only, and applicable to all school purposes (Mills' Ann. Stats., sec. 4032). If these claims cannot be paid out of this special fund, they cannot be paid at all. And if the school board may refuse to pay them, though it has more than that amount in the fund unappropriated, it would, in effect, be exercising the unlawful power of preferring its creditors.

In the first place, we say that the conclusion from the premises does not necessarily follow. That the claims cannot be paid from the special fund of a

particular year is not equivalent to saying that they may not be paid out of the special fund of some other year. What we say here is, that, since provision was not made in the special levy of 1903 for these claims, and the special levy for that year was made and needed for other school purposes, it ought not to be impaired by being applied to this debt which is not of the same character as the ordinary demands upon it, for which, only, it was imposed and collected.

It may be true that it is not within the power of the board of school directors to prefer claims which are payable only out of funds raised from taxation for ordinary purposes—that is: claims of the same character must be paid without any preference except as the statute may otherwise specifically direct. Such claims as these of respondents, however, we have held in the Adams county case, *supra,* are not claims of an ordinary, but of an extraordinary, nature, and while school district No. 1 might, if funds on hand were sufficient, pay the same out of the special fund, yet it ought not to be compelled to do so under the facts of this case. As we read this record, school district No. 1 was not at fault for not having included in its certificate for a levy the amount of these claims, for they were not then ascertained. And for the same reason respondents were not at fault for not having, before the school board made its certificate, brought mandamus proceedings against the board to compel the levy of the tax with which to pay them.

It does not follow, however, that petitioners are not entitled to any relief under the facts of this case, although they are not entitled to that which was awarded. Under the ancient practice, a peremptory writ of mandamus could not be amended, and must issue in the same form as the alternative writ. The provisions of our law in relation to mandamus in the *nisi prius* courts are found in a chapter of the

civil code, and there is no reason why the liberal rules of procedure and amendments governing other civil actions instituted thereunder are not applicable to a proceeding in mandamus. In these two applications under consideration the proceeding was by petition supported by affidavit and written notice to the respondents, and no alternative writ was issued. Upon a hearing had under issues of fact, the peremptory writ was the first one issued. We do not consider it fatal to petitioners' application that alternative relief was asked for, although there are decisions to the effect that a writ cannot go in the alternative. In *State v. City of Milwaukee,* 22 Wis. 398, the doctrine was announced that the mandatory clause of the writ should expressly state the duty required of the defendant. There the command was that the defendant pay the judgment mentioned, or issue bonds for its payment, or proceed and levy a tax therefor. It was held that these acts are distinct in their nature, and that defendant may not know which to perform. A motion to quash the writ was sustained, but leave was given to relator to amend the writ if it desired to do so, for it was held that the writ was amendable.

In *Ralls County Court v. U. S.,* 105 U. S. 733, where the command of the writ of mandamus was to pay from money already raised, or levy a tax to raise more, it was held that a writ thus issued in the alternative was proper. However that may be, we are satisfied that, where no alternative writ issued, but the peremptory writ was the only one allowed, if the granted relief was not proper, still if the petitioner or relator is entitled to some kind of relief which was included in his prayer, he should receive it, and the necessary amendments in pleadings and processes may be made to conform thereto. The modern authorities sustain this conclusion.—Merrill on Mandamus,

§ 294; *State v. Supervisors,* 20 Wis. 79, 84; *People ex rel. v. Supervisors,* 27 Calif. 655, 684; *People ex rel. v. Supervisors,* 142 N. Y. 271, 278; *Odendahl v. Russell,* 86 Ia. 669; *Dew v. Judges of Sweet Springs,* 3 Am. Dec. 639; 13 Enc. Pl. & Pr. 751, *et seq.*

The judgment is reversed and the cause remanded with instructions to the district court to set aside its judgment heretofore entered and recall the peremptory writ heretofore issued, and to enter a new and final judgment in favor of petitioners granting a peremptory writ of mandamus commanding the respondent below at the time designated by law for so doing in the year 1904 to certify to the board of supervisors of the city council of the city and county of Denver, acting as a board of county commissioners, a special levy of a tax, or to include the same in its certificate of a special levy for ordinary purposes, sufficient to pay the claims of the respondents. Meanwhile respondent shall not make or deliver its certificate to the board without making adequate provision therein for such levy.

*Reversed and remanded.*